YAZOO & MISSISSIPPI VALLEY RAILROAD Co. v. SIMON HAWKINS.

[61 South. 161—541.]

MASTER AND SERVANT. *Appliances. Place for work. Locomotive.*

Where a railroad train was equipped with seventy-five per cent. air pressure, the amount required by the Interstate Commerce rules and regulations, which rendered the operation of the train reasonably safe, the railroad was not responsible in damages to a brakesman who attempted to board the pilot of the engine moving at a speed of five miles an hour and who missed his footing and clung to the pilot and was carried for a short distance and falling was crushed by the engine, where the engineer had immediately made every possible effort to stop the train and save him.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by Simon Hawkins against the Yazoo and Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

We contend that the peremptory instructions asked by the appellant should have been granted.

In the first place it must be conceded that appellee's fall was caused solely by his own negligence. He simply made a misstep in getting on the moving train and fell down. The train was running slowly and the step was properly constructed and in good repair. It is not necessary to argue further with reference to this fall, because there could be no possible claim of liability on this account.

There can be no claim on account of the engineer and the other members of the crew, seeing appellee's situation of peril and not trying to save him, because it is agreed that everything possible was done to stop the train immediately when appellee fell. There can be no claim under the *prima facie* statute, for every circumstance connected with the unfortunate occurrence has been detailed by eyewitnesses. All the facts are in evidence and must control.

There can be no recovery in this case because of any defect, in the air brakes, or any of the machinery, ways or appliances, because the undisputed testimony shows that when the train left Cleveland, Mississippi, the initial point, its air equipment was in splendid condition, and that although an accident happened to the engine putting the brakes on the engine, the plaintiff testified that he knew of this accident to the brakes. Notwithstanding this accident to the brakes, the testimony shows the train was still equipped with seventy-five per cent. air pressure, the amount required by the interstate commerce rules and regulations, and was reasonably safe, however, whatsoever shadow of a claim the appellee has, he must rest it on the alleged failure of the air brakes on the train to work, after he had fallen, claiming as a consequence the failure of the train to stop in time to save him from injury.

But in no aspect of the case can the appellant be liable, because the uncontradicted testimony shows that appellant failed in no duty it owed appellee, that it was guilty

of no wrong and guilty of no negligence causing, or contributing in any degree, to the injury appellee received. The evidence shows the step on the engine, on which plaintiff attempted to alight, in good condition and that his fall was caused by appellee's misstep.

The testimony shows that the train was inspected when it left Cleveland, the initial point, and that at the beginning of the journey the air was in good working order. Plaintiff's own testimony shows that air on the engine was diminished by an accident to the air brakes at Shaw, a place en route. The only possible showing of any failure to provide safe air brakes was occasioned by this accident, en route at Shaw, a short distance north of Estelle. Mr. Gravey, the machinist, testified that the shops at Vicksburg were the nearest repair shop and on cross-examination the same witness testified that if the brakes on the engine broke on the road "the company could not help that," meaning of course that the engine could not be fixed until it reached Vicksburg.

Save for the accident at Shaw, the record shows the condition of the train good in every respect and no other negligence is complained of. And except for the plaintiff's conjecture that he was carried a distance of about 100 feet in the inexplicable situation he testified himself to be in, the testimony shows that the brakes on the train, as a whole, were in good condition and reasonably safe, at the time of the accident. But when the plaintiff had full knowledge of the accident at Shaw, no one will contend that it was negligence on the part of the railroad company to use the engine to the end of the journey where defects recently made may be repaired.

The law is reasonable and does not require that every time an accident occurs on the road rendering the serviceability of the brakes on an engine a little less than ordinarily required that a new engine must be provided. After an accident occurs the railroad company is entitled to a reasonable time within which to make repairs.

In the case of *Seaboard Manufacturing Co.* v. *Woodson*, 94 Ala. 143, 10 So. 87, the court says: ''Unless there had been a reasonable opportunity to effect a remedy, it could not be said that the failure to do so was negligent. The defendant must have had sufficient time to remedy the defect after its discovery, before it could be chargeable with negligence in failing to effect such a remedy. Mere knowledge without opportunity to act on it would not be negligence.''

''The absolute obligation of the employer to see that due care is used to provide safe appliances for his workmen is not extended to all the passing risks which arise from short-lived causes.'' *Whitaker* v. *Brent,* 167 Mass. 588, 46 N. E. 121.

There is no difference in principle between a car or an engine being transported to shops for repairs and the use of such car or engine after same had been disabled en route, until such reasonable time as shops could be reached, where in both instances the servant knows of the defects.

It is held that where a car is being carried to shops for repairs that section 193 of the Constitution with reference to knowledge of defects, etc., does not apply. And a person using such instrumentalities knowing their defective condition is guilty of contributory negligence as a matter of law. *Illinois Central Railroad Co.* v. *Bowles,* 71 Miss. 1003, 1580, 138.

In order to recover on account of defects in ways and appliances such defects must have been the proximate cause of an injury. 20 Ency. of Law (2 Ed.), p. 78, citing *Garnett* v. *Phoenix Bridge Co.,* 98 Fed. 192.

In the case of the *Railroad Co.* v. *Daniels,* 73 Miss. 258, it is held that if the machinery and appliances are sufficient for the purpose intended and if used for the purpose directed the company is not liable for an injury sustained by an employee while using them in an improper manner, or for a purpose for which they were not intended, al-

though the machinery and appliances may be defective and the defect contributed to the injury.

The case of *Bell* v. *Oil Mill Co.,* 77 Miss. 387, is a case in which plaintiff is an employee of an oil mill and while engaged in lifting buckets of pitch in some way lost his balance and fell, it seems "the carpenter's horse" used by him fell at the same time that the plaintiff fell. Held, that the fact that the apparatus fell with the jerk received from plaintiff's fall does not render it defective for the purpose for which it was intended and for which it was being used.

If the injury of appellee was contributed to in any way by the use of the engine after the accident to the brakes at Shaw, his situation was such that the defendant could not reasonably have been expected to have foreseen, and if the injury caused by the use of defective machinery, ways and appliances is such as would not have been in the reasonable contemplation of the master while using defective apparatuses, defendant cannot recover.

In the case of *Chicago R. R. Co.* et al. v. *Denius,* decided by the Supreme Court of Indiana, March 20, 1908, reported in 84 N. E. 9, it was held:

"In an action against a railroad company for an injury resulting from defendant's alleged failure to properly ballast its road or fill the holes between the ties, it clearly appeared that plaintiff's foot slipped from a tie, which caused him to fall, and that his inability to remove or extricate himself before he was caught and injured may have depended on the fact that the road was not ballasted. Held, that such result or consequence was not one which defendant was bound to anticipate as the natural and probable consequence of not properly ballasting its road."

In delivering the opinion of the court Jordan, J., said:

"The insistence of appellant's counsel is that under the facts alleged in the complaint it is not disclosed that the negligence attributed to appellants was the proximate

cause of the injury sustained by appellee. On the other hand counsel for the latter argue that the complaint established that the low place, or hole as they term it, was the proximate cause of the injury. . . . . It is apparent, we think, that the slipping of appellee's foot from the crosstie upon which he had stepped was the first immediate and originating cause of the injury which he sustained. By reason of the fact that his foot slipped from the tie, it appears that he fell to the ground into one of the low places between the rails. No complaint is made in the pleading, in respect to the tie from which his foot slipped, but because of the accident or injury in question, is attributed to the negligence of appellants in not properly ballasting their roadbed at the place where the accident occurred and in maintaining it with the low places thereon, into one of which appellee fell and from which, as alleged, he was unable to extricate or remove his body in time to escape from being run over by the moving car. . . . . It has been affirmed by this court that proximate cause is the efficient cause, or in other words, the cause which originates and sets in motion the dominating agency that necessarily proceeds through other causes as mere instruments or vehicles in the natural line of causation to the result in controversy. *Billman* v. *Indianapolis, etc., R. Co.,* 76 Ind. 166, 40 Am. Rep. 230; *Pennsylvania C.* v. *Congdon,* 134 Ind. 226, 33 N. E. 795, 39 Am. St. Rep. 251; *New York, etc., R. R. Co.* v. *Hamlin* (Ind. Sup.). 79 N. E. 1040, 10 L. R. A. (N. S.)—*Enochs* v. *Pittsburg, etc., R. R. Co.,* 145 Ind. 635, 4 N. E. 657, *Lake Erie, etc., R. R. Co.* v. *Charman,* 161 Ind. 95, 67 N E. 923.

"It is apparent that the slipping of appellee's foot from the tie which caused him to fall was, as previously asserted, the originating and immediate cause of the accident. Certainly the inability of appellee to remove or extricate himself from the place or position into which he had fallen as alleged, before he was caught and injured by the moving car, was not such a result or consequence

as appellants in reason were bound to have anticipated or
expected as the natural and probable consequence of their
alleged negligence in not properly ballasting their road-
bed by leaving low places therein at the point of acci-
dent.  The rule well affirmed by the authorities is that un-
der the law a person is required to anticipate or fore-
see and guard against what usually happens or is likely to
happen; but this rule does not require him to anticipate
or foresee and provide against that which is only re-
motely and slightly probable.  The general test in such
cases is not whether the injurious results or consequences
was possible, but whether it was probable; that is likely
to occur according to the usual experience of persons. A
wrongdoer cannot be held responsible for a consequence
which is merely possible according to occasional exper-
iences, but only for a result or consequence which is
probable according to the ordinary and usual experience
of mankind.   *Enochs* v. *Pittsburg, etc., R. Co., supra;*
*New York etc., R. Co.* v. *Perringuey,* 138 Ind. 414, 4, 9, 34
N. E. 233, 37 N. E. 976, *McGahan* v. *Indianapolis, etc.,*
*Gas Co.,* 140 Ind. 335, 37 N. E. 199, 601; 29 L. R. A. 355,
49 Am. St. Rep. 199; *Roots Co.* v. *Meeker, supra; Hickey*
v. *Studder,* 164 Ins. 189, 75 N. E. 117; *Davis* v. *Mercer*
*Lumber Co.,* 164 Ind. 413, 73 N. E. 899, and authorities
cited; *Lane* v. *Atlantic Works,* 111  Mass. 136, 51 N. E.
141,——L. R. A. 794; Wharton on Negligence (2 Ed.), p.
776; Pollock on Torts; Cooley on Torts (3 Ed.), 124, 125;
*Billman* v. *Indianapolis, etc., R. Co., supra,* 96 Ind. 346,
49 Am. Rep. 168.

"When tested by the rule or principle asserted and
supported by the foregoing authorities, it is manifest
that the negligence imputed to appellants was not the
proximate cause of appellee's injury.  It is true that he
slipped and fell into one of the unfilled places between the
crossties and was, as alleged, unable immediately to ex-
tricate himself from the position into which he had fallen
but had it not been for the efficient intervening cause—

the moving car which ran over and injured him as alleged —he would, for aught appearing to the contrary, have escaped uninjured, while as heretofore asserted, a person charged with negligence is liable or responsible for the injuries which prudent persons in exercise of ordinary care could have foreseen and anticipated as the natural and probable consequence of his negligence, but this rule does not require that he should have foreseen or anticipated the precise injury as it resulted from his negligence of omission of duty. *Billman* v. *Indianapolis, etc., R. Co., supra; Davis* v. *Mercer Lumber Co., supra.*"

It may be said as asserted in *Roots Co.* v. *Meeker, supra,* that appellee's injury was caused or produced by a combination of circumstances which produced the plaintiff's injury, according to his version of the affair, was certainly unusual and perhaps would not again occur in one thousand years; this is a case in the first place, where an unforeseen accident happened to the machinery at Shaw, Miss., a little ways north of where the plaintiff was injured, had it not occurred according to plaintiff's version of it, the brakes would have been in good order and he would have been saved. The plaintiff had been a brakesman for twenty-seven years, according to his testimony, was experienced in boarding moving trains and had perhaps safely alighted on a like step ten thousand times before in his lifetime. On this occasion however he fell; circumstance is that, having fallen, he did not fall immediately under the wheels of the train, and still another unusual circumstance is that at the very time he fell his situation was noted and the air brakes applied. It must be conceded that his situation was so extremely unusual that a combination of circumstances surrounded him that could not have been in the reasonable contemplation of the most learned and skilled of men, or the most careful and prudent. Probably never before and probably never again will a man find himself in the same situation and circumstances in which this man found himself.

This accident occurred in 1909, prior to the passage of the statute changing the rule of contributory negligence in this state.   Therefore that statute would not be applicable and appellee is barred by his own contributory negligence in making the misstep in getting on the engine; appellee was guilty of negligence, directly contributory to his injury.   He testifies himself that "I slipped just as I caught the pilot."   There is no pretense that the fall was due to anything except the plaintiff's own negligence. He had been brakeman for twenty odd years, had experience, and was attempting to board a train running four or five miles per hour with a properly constructed footboard in good repair.

Can it be said that the very fall that produced plaintiff's injury did not even contribute proximately to his injury?   But for the accident to the air brakes at Shaw, plaintiff conjectures that his injury might have been avoided.

Even if Sec. 193 would apply to accidents to cars and engines en route, and before a reasonable opportunity to repair them is had, nevertheless the knowledge of such defects would be a factor in determining whether the plaintiff was guilty of contributory negligence.   In other words, the provisions with reference to knowledge of defects does not abolish the defense of contributory negligence.

*Buckner* v. *R. R. Co.*, 73 Miss. 873. In this case appellee was grossly negligent and his negligence was all the more culpable because he knew that air brakes on the engine were out of order.   This case must be reversed because the defendant and its servants are clearly shown to have done every duty required of them and were guilty of no wrongdoing or negligence in any way causing or contributing to appellee's injuries and because the uncontradicted proof shows clearly that appellee's injuries were caused solely and alone by his own misstep in attempting to board the train.

*Hudson & McKay,* for appellee.

A peremptory instruction is proper only where all the facts in evidence taken as true, with every just inference from them, fail to maintain the issue. *Whitney* v. *Cook,* 53 Miss. 551. And if there is any conflict in the evidence, the view which is most favorable to the party against whom the instruction is asked, must be taken as true. *Carson* v. *Leathers,* 57 Miss. 650. Where there is a material conflict of evidence, a peremptory instruction should not be given. 71 Miss. 966; 52 Miss 840; 69 Miss. 435; 72 Miss. 323. In granting a peremptory instruction the court assumes as true all testimony tending to establish the issue in favor of the losing party. 71 Miss. 212. Under the guidance of the wise and frequently tried and applied rules of this court we respectfully submit that a peremptory instruction in this case was a legal impossibility.

Under the wisdom and beneficence of section 193 of our Constitution and chapter 194 of the Acts of 1908 all questions of common employment or the fellow-servant rules are completely at rest in favor of plaintiff; and by the selfsame authorities all questions of knowledge of defects in the defendant's equipment, on the part of the plaintiff, are also resolved completely in plaintiff's favor. Our *prima facie* statute, section 1985 of the Code, applies in all its wisdom and force to this case, as held in the recent and most learned opinion in the case of *Fuller* v. *R. R. Co.,* 56 So. 783, where the court uses this language, after a most thorough review and consideration of the general application of the statute: ". . . . We have thus seen that the statute is application in every conceivable case . . . the statute is intended to cover every conceivable case of injury which is the result of the running of cars."

In the same able opinion is quoted, approved and amplified the language in the *Hollinshed case,* 55 So. 40, to-wit: "The statute applies regardless of whether the

facts attending the injury are in evidence or not.'' And we solicit the court's attention to the *Fuller case, supra,* as of instructive application to the case at bar in many other important and controlling particulars.

The case of *Chicago & E. R. R. Co.* et al. v. *Dinius,* 84 N. E. 9, which appellant cites and quotes from has no instructive bearing upon the instant case.

Plaintiff's situation may be compared, in some respects, to that of a person in peril on the track before an approaching train, although such comparison is very unjust and unfavorable to plaintiff, for the reason that defendant owed the plaintiff a far higher degree of care and duty than in the case we will suppose. Suppose a man is on a railroad track in an apparent position of peril from an approaching train; suppose the engineer of that train sees the man in his peril, or is signaled to stop the train at once on account of the man's peril; suppose the engineer sees the man in peril, or is signaled in time to stop his train without injuring the man; yet, suppose the train is not stopped and the man is injured thereby; can it be said for a moment that a most overwhelming case of negligence is not made out against the railroad company in the supposed case? Most surely it is, and yet the defendant owed a far higher duty and degree of care to plaintiff in the case at bar. The defendant knew of plaintiff's peril and the defendant was promptly and timely signaled to stop the train and the defendant had ample time and distance in which to stop, and yet it failed to stop, either because the train was not properly equipped or because it was not completely or properly handled and the plaintiff was carelessly and most needlessly injured. This truth is self-evident. And then tell us that this is not a case even for the jury!

This learned court has so uniformly and wisely planted itself on the safe and sane grounds of leaving such matters to the jury that we deem it not necessary to call the attention of the court to such cases as *Bell* v. *R. R. Co.,*

30 So. 821; *Mercantile Co.* v. *R. R. Co.,* 87 Miss. 675, and so many others we might cite. In such cases the court usually says; "So many questions are integrated usually into the solution of the question of negligence, it is so necessary carefully to examine all the circumstances making up the situation, that it must be a rare case of negligence that the court would take from the jury." The case at bar is many times stronger than the *case of Fuller,* 56 So. 783, and a great many of the others we might cite.

The cited case of *Seaboard Mfg. Co.* v. *Woodson,* 10 So. 87, has no application to the instant case. At best it only reannounces some time-worn general principles as operating under a special statute of Alabama. There is no showing made by defendant that it made any effort to repair the defective brake or that it was impracticable to remedy it. It was not shown why another engine was not submitted for the crippled one. In fact the evidence shows that the defendant was using the chippled engine in the regular course of its regular business, just as if nothing had happened to it. And the plaintiff was thereby forced to continue to use this dangerous engine, however much against his will and beyond his control.

Neither has the cited case of *Whittaker* v. *Bent,* 167 Mass. 588, 46 N. E. 121, an application to the case at bar. The cited case had to do with unknown and temporary dampness in foundry moulds, which was disposed of on the grounds of the fellow-servant rules.

The cited case of *R. R. Co.* v. *Bowles,* 71 Miss. 1003, has no application to the case at bar, except by the strongest inference to condemn the construction appellant would place upon its holdings. In the case cited the crippled car had reached the repair shops before Bowles was injured thereby. It was not being used by the company as a car for the transaction of its business. It was not dangerous because of its location or use, but because of its condition. And Bowles was controlling the movements of

the crippled car.  Under those and other distinguished
circumstances the court held that section 193 of the Con-
stitution did not apply.  But the court further said: "If,
in the prosecution of its business, it had used crippled
cars, and an employee, required to handle such cars, had
been injured, the provision of section 193 of the Constitu-
tion would have applied."  In the case at bar the crippled
engine was on regular duty on defendant's regular road;
it was being used as an engine for the transaction of the
company's regular business; it was not being transported
as a disabled engine, condemned to the repair shops; nor
had it reached the repair shops; nor had the plaintiff any
control whatever over its use or movements, as Bowles
had of the crippled car in the cited case.  Therefore,
the Bowles case is wholly inapplicable to the instant case.
And we respectfully submit that the principles laid down
in the Bowles case, when applied to the case at bar, dem-
onstrate conclusively that section 193 of the Constitution
applies fully and freely to the case at bar.  We invite the
court carefully to compare the Bowles case with the in-
stant case to see that the Bowles case condemns the con-
tention of appellant.

The case of *R. R. Co.* v. *Daniels,* 73 Miss. 258, has no
application to the instant case for the patent reason that
that case went off solely on the ground that the plaintiff
therein was putting one of defendant's appliances to a
use not intended and in an improper manner.  The cited
case of *Bell* v. *Oil Mill Co.,* 77 Miss. 387, does not apply
to the case at bar in any particular whatever.  One has
but to read it to learn that no reason can be assigned for
the citation.  The cited case of *Buckner* v. *R. R. Co.,* 72
Miss. 873, has no application to the instant case.  By the
Constitution knowledge of defects shall be no defense,
and the Buckner case only held that the Constitution in
this regard does not destroy the defense of contributory
negligence in a proper case; but in the instant case there
was no element or proof of contributory negligence and
the jury so found.

*Monroe McClurg,* for appellee.

I copy the last part of counsel's brief—the summing up. It is their prayer for relief and, consequently, the essence of their case:

"This accident occurred in 1909 prior to the passage of the statute changing the rule of contributory negligence in this state. Therefore that statute would not be applicable and appellee is barred by his own contributory negligence in making the misstep in getting on the engine; appellee was guilty of negligence directly contributory to his injury. He testified himself that, 'I slipped just as I caught the pilot.' There is no pretense that the fall was due to anything except the plaintiff's own negligence, and his attempting to board a train running four or five miles per hour with a properly constructed footboard in good repair.

"Can it be said that the very fall that produced plaintiff's injury did not even contribute proximately to his injury? But for the accident to the air brakes at Shaw, plaintiff conjectures that his injury might have been avoided.

"Even if section 193 would apply to accidents to cars and engines en route and before a reasonable opportunity to repair them is had, nevertheless the knowledge of such defects would be a factor in determining whether plaintiff was guilty of contributory negligence. In other words the provisions with reference to knowledge of defects does not abolish the defense of contributory negligence.

"*Buckner* v. *R. R. Co.*, 73 Miss. 873: In this case appellee was grossly negligent and his negligence was all the more culpable because he knew that air brakes on the engine were out of order.

"This case must be reversed because the defendant and its servants are shown to have done every duty required of them, and were guilty of no wrong or negligence in any way causing or contributing to appellee's injuries and

because the uncontradicted proof shows clearly that appellee's injuries were caused solely and alone by his own misstep in attempting to board the train.''

Let this be the true statement of the case. The little old condemned step on the nose of the engine was out of date. What chance did the defendant, appellee (by his administrator now), have to correct this dangerous appliance? It was not for him to ask why, but to do or die. The truth is that, it matters not in this case whether the anticontributory rule had been repealed; did the company give the servant a safe appliance for the work required of him? The answer is, No.

''Yes,'' he said, ''I slipped just as I caught the pilot,'' but if the engine had been then properly equipped as the law requires, the ''slip'' would not have occurred because the grip of the brakes would have made it safe in spite of the deficient step.

In the above quotation from the final summary of counsel's brief, I repeat, ''There is no pretense that the fall was due to anything except the plaintiff's own negligence.'' In view of the evidence of the disabled engine this statement is hardly fair. Even though the servant knew of the condition of the crippled engine, the defendant had the first duty to him to attempt to repair the deficit. It is hardly fair, or legal, in view of the court's common knowledge, to say that Simon Hawkins, a brakeman, knew of the intricacies of such defects and their consequences, and say, ''I will not work for you unless you correct the fault.'' He was no machinist or engineer. He had the right to believe that those in charge would make all safe for him. Then, I submit that it must be in a great stress when counsel say that there is ''no pretense that the fall was due to anything except the plaintiff's own negligence.'' It was not the fall alone; the helpless engine rolled along over him.

Suppose the fall was due to something else? Where does the responsibility lie? The statute and the decisions

say that the company must exculpate itself. It cannot be a sufficient answer under our law to say, ''I was guilty, but you contributed because you ought to have known and quit.''

It does not matter, I respectfully submit, how long Simon Hawkins had been a brakeman; after all he was only a competent, faithful brakeman. He was not a trained engineer nor a skilled mechanic.

I further respectfully submit, that the proximate cause of this injury was due to the disabled condition of the engine. It was not Simon's duty to know the condition of the air brakes. He had the lawful right to believe that the company would protect him. He contributed his faithful service and did his duty in the lawful right believing that the company would not only exculpate itself from injury to him, but would actually protect him.

The soliloquy in the above quotation as to section 193 of the Constitution is rich in this: The attorneys for a plaintiff press facts, while the learned counsel for the defendant press theories. No two cases are on ''allfours.'' It is just a bit amusing to think, in the light of the facts of this case, that the defendant should have had an opportunity to repair before Simon could complain. The company did repair by stripping the engine of the brakes. And Simon thought the repair good. He did not know. Those in actual charge did. They stripped the engine of its brakes and thereby knowingly lessened the power to hold it. Simon did not know whether this was sufficient repair. The law justifies him in the right to believe that it was. It was the duty of those in charge of the train to notify and warn him.

The testimony is clear, we think, that the injury was not occasioned ''solely and alone by his own misstep in attempting to board the train,'' as contended for by counsel for appellant in closing their brief. There can be no question that taking off the brakes made the holding of the moving, heavy train less effective, and we are told

by the testimony that a heavy train is more responsive to the brakes than a light one. So it was for the jury to say whether that uncontradicted fact, connected with the question whether the size of the step—that kind being since condemned and put out of use—were the proximate causes of the injury. There is testimony showing that even after he slipped, the train, properly equipped as when it started on the run, could have been stopped during the time Simon was holding to the ribs of the pilot. And, too, the breaking down of the air brake so soon after starting on that run, warrants the inference that the appliance was not in good condition when it began the journey. At all events the question of contributory negligence was a fact squarely put to the jury by appellant's instructions and pressed in their argument. That question of fact having been settled adversely to appellant, and that seems to be the bone of their contention, we believe this court will not disturb the verdict.

Argued orally by Wm. L. McKay, for appellee.

Reed, J., delivered the opinion of the court.

Appellee brought suit against appellant, claiming damages on account of personal injuries sustained while he was employed as a brakeman on a freight train. Appellee attempted to board the pilot of the engine by stepping on a small step attached to the pilot while the train was going about five miles per hour. He missed his footing, caught hold of the ribs of the pilot, where he clung for a short space, and fell, and one of his legs was run over and practically severed by the wheels of the pony truck. As soon as he fell, the engineer applied the air brakes, and the train was stopped in a distance of about one hundred feet. The negligence claimed against appellant was that all of the air brakes on the train were not in proper working order; that some of the brakes were put out of condition by reason of an accident after the train had

started on its trip that day; and that if all the brakes had been working properly, the train could have been stopped before appellee rolled off the pilot.

It is shown in the testimony that, notwithstanding the accident, the train was still equipped with seventy-five per cent. air pressure, the amount required by the Interstate Commerce rules and regulations; that this rendered the operation of the train reasonably safe. It also appears that everything possible was done by the engineer to stop his train immediately after appellee had fallen, which fall was because of appellee's misstep.

A careful review of this case causes us to conclude that the railroad company was not guilty of negligence towards appellee, and did not fail in the duty it owed him to a degree that would entitle. him to a judgment for damages. It seems to us that this is a case where the injury to the unfortunate man resulted from an accident only. We do not believe the evidence shows that appellant should be held in damages for the injury to appellee by reason of this accident. We believe that appellant should have been given the peremptory instruction asked at the end of the trial.

*Reversed and dismissed.*

OPINION ON SUGGESTION OF ERROR.

COOK, J. This suggestion of error was predicated on the following grounds, upon which appellee relies for an affirmance of the case, and the setting aside of the former judgment of this court, to wit:

"I. The judgment of reversal overlooks or misconceives the proposition of negligence upon which the case was prosecuted and defended in the trial below, and upon which the jury found its verdict and the trial court its judgment. *The case was not tried below on the theory that insufficient brake equipment was the cause of the delay.*

"II.  The judgment overlooks or fails to consider the credible and reasonable testimony of witness Woodruff, who testified *that the train could and should have been stopped in ten feet, to plaintiff's safety, instead of negligently running one hundred feet, to plaintiff's injury.  This was the strongest positive evidence affirmatively showing appellant's negligence as the cause of the injury.*

"III.  The judgment of reversal overlooks or fails to consider the fact and truth, appearing of record in part, *that the trial below—the evidence, the argument, etc.— centered and revolved around the proposition that appellant could and should have stopped the train before appellee's injury, and that, if the train had been stopped within a reasonable distance, the injury would have been avoided.*"

With reference to the first ground, it is sufficient to say that the court did not overlook the theory upon which the case was prosecuted and defended in the trial below. However, the court did not deem it controlling upon this court how the case was presented in the court below; but the court endeavored to try the case upon the record as made by the pleadings and evidence in the court below, and to base its decision thereon.

We did not overlook the testimony of the witness Woodruff.  In deciding the case, it was assumed that Mr. Woodruff was stating the facts; but, in view of the fact that the braking power of the train was caused by an accident occurring between the terminal points of the railroad, and in view of the fact that the defects could not be repaired before the train had reached the terminal points, we decide that to operate the train with its lessened braking power was not negligence, especially when the record shows, without dispute, that the train still had the amount of braking power required by the laws of Congress.

It may be proper to add that the theories adopted by the lawyers in the trial court are not always decisive of the real point involved in the case as made by the record, and this court always reserves to itself the right to ignore the theory upon which the case was tried, in order to preserve the legal rights of the parties disclosed by the record of the pleadings and testimony in the case.

*The suggestion of error is overruled.*