. J. T. CARPENTER *v.* W. F. DOUGLASS ET UX.

[61 South. 161—425.]

1. EQUITY. *Exhibits as part of bill. Vendor and vendee. Rights and liabilities as to each other. Taxes.*

An exhibit filed with a bill in chancery is as much a part of the bill as the allegations of the bill.

2. VENDOR AND VENDEE. *Rights and liabilities. Taxes. Legal title.*

The vendor by title bond holds the legal title only as trustee for the vendee, while the beneficial interest rests in the vendee and in the absence of some special stipulation or exceptional circumstances the vendee is liable for the taxes.

OPINION ON SUGGESTION OF ERROR.

SPECIFIC PERFORMANCE. *Bond for title. Bill.*

In a suit to enforce a bond for title against the heirs of a deceased vendor, where it appears that there had been no administration on his estate and that his heirs were minors, and under the allegations of the bill it appears that complainant was entitled to credit for taxes paid before the execution of the bond for title. The bill was sufficient to entitle the complainant to a decree appointing a commissioner to convey the property to the vendee on payment of the money found due by him on an accounting.

APPEAL from the chancery court of Kemper county.

HON. J. F. McCOOL, Chancellor.

Suit by W. F. Douglass and wife against J. T. Carpenter and others. From a decree for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*S. M. Graham,* for appellants.

There is only one question, without which there would have been no litigation in this matter, and that is:

1. Whose duty is it to pay the taxes? The vendee in possession under bond for title, or the vendor holding notes for the purchase money?

It will be agreed by and between the attorneys on both sides that this is the question to be decided in this case which was raised on demurrer herein.

2. The other, a minor question, is whether this was a proper proceeding to recover for the taxes paid in 1902, when the premises were leased. As to the first question, it would seem that the maxim of equity that "he who seeks equity must do equity" applies here with great force. Here is a vendee in possession of a four hundred and eighty-acre farm under a bond for title receiving all the rents and profits and holding an equitable title to same, coming into an equity court seeking reimbursement for the taxes he has paid as such vendee without offering to do equity by refunding the rents and profits which he, the vendee, has been receiving through all these years.

Speaking of the nature of such contracts of sale of real estate as we have involved in the instant case, this court said through Justice CLAYTON speaking for the court that (4 Smed. & Marsh. 300), "The retention of title by the vendor upon a sale, is in effect, the same thing with conveying the title and taking a security by mortgage." Citing *Graham* v. *McCampbell,* Meigs' Rep. 52.

Again in the case of *J. H. Watson* v. *R. P. Sawyer* et al., 54 Miss. 64, this court speaking through Justice

Chalmers said: "The vendor by title bond holds the legal title only as trustee for the vendee and as a security for the purchase money, while the beneficial interest vests in the vendee. The latter, therefore, in the absence of some special stipulation or exceptional circumstances is liable for the taxes." Citing with approval 13 How. (U. S.) 57, 64.

But counsel for plaintiff (appellees) argues and in fact alleges in his bill that this bond for title was such a "special stipulation" or agreement as would compel the vendor to pay the taxes. The title bond is set out above and speaks for itself and shows conclusively on its face that it contains no such special stipulations as would compel the vendor to pay the taxes, but instead is an ordinary bond for title. Counsel argues that the covenant of warranty in the aforesaid contract of sale made it necessary for the vendor to keep the taxes paid on said land so he (the vendor) could specifically perform at the proper time and this is evidently the view the learned chancellor took of the matter, but a complete answer to this contention will be found in a very able and exhaustive opinion handed down from the Supreme Court of the United States in the case of *Bradford* v. *The Union Bank of Tennessee,* 14 How. (U. S.) 57, 64. In this case Bradford was subrogated to the rights of the vendee Brown, Bradford being surety for the purchase money and having it to pay as surety.

The court speaking through Justice Nelson in a very able opinion said: "Indeed the courts in Mississippi regard the vendor in contracts of this description as standing, in most respects, upon the footing of one who has already conveyed the title and taken back a mortgage as security for the purchase money, and the vendee as mortgagor in possession. 4 Sm. & Marsh. 300, 61d., 149, 101d., 184.

"Brown, vendee, therefore, during the running of the contract, was at least the owner of the equitable title, ac-

companied with the possession, and as such was under obligation to take care of and pay the taxes assessed, accruing after his purchase. And the loss of title to the whole or any part of the tract in consequence of neglect, in this respect, is attributable to his own fault, for which the vendor is not responsible. No doubt, with a view to the better security of the purchase money, the vendors might have paid the taxes in case of the neglect of the vendee, and charged the amount to him. But this was a question they had a right to determine for themselves, and with which Brown (the vendee) had no concern.

"It is quite clear, therefore, if the case stood on the original contract of purchase, the defendants, the vendors, on the tender of the purchase money, would have been bound only to convey to the vendee a good and valid title at the time, subject to an understanding as to title that existed under tax sales, where the payment of taxes had accrued subsequent to the purchase. For these titles they, the vendors, would not have been responsible, as they arose from the neglect of the vendee Brown.''

From the excerpt above it is clear that it is not only the duty of the vendee in possession under a bond for title to pay all taxes accruing after the execution of the contract of sale, but that if the land be sold for taxes, it is the fault of the vendee and therefore the vendee's loss in case the tax title matures.

There is no quarrel between litigants about the execution of the deed or any other question except as to the allowances for the taxes paid by vendee after possession was given, and if appellees will do equity by paying back the rents and profits of said land, appellants will then be willing to pay back taxes, but until appellees are willing to do equity, they should not be heard to come into an equity court.

As to the question of this being an improper proceeding on the part of complainants (appellees), section 2077, Annotated Code 1906, provides a course of procedure

which would have been full and adequate in its effect, and in fact it provided for just such cases as the instant case, and having the administrator appointed, all just claims in favor of the vendee could have been probated and allowed; in that event the claim of appellees for taxes paid for the year 1902, while possession was only under lease, would be barred by our statute of limitations. Therefore, if the claim would not be allowed by an administrator, it should not be allowed in a proceeding like as in the instant case.

Appellees admit in their bill that they went into possession in 1902, and have remained in possession since that time, being vendees since Feb. 5, 1903; they admit that the vendor is deceased and that there has been no administration of his estate; they admit that their claim for taxes paid is only for taxes paid since they have been in possession; they admit that there are minor heirs' interest in this suit and this record fails to disclose that they have ever been legally brought into court.

Counsel for appellees realized the necessity for some exceptional circumstances or stipulations in a contract for the sale of land to compel the vendor to pay the taxes, and so he alleged in his bill that vendors agree in their bond for title to keep all the taxes fully paid up, but the bond for title speaks for itself and we submit that there is no such stipulation in said bond and if there were any other agreement, appellees failed to attach same to their bill or set out same *"in haec verba"* therein.

This whole case, shorn of an effort on the part of appellees to recover for taxes paid while in possession as vendees under a bond for title, is wholly without substance or equity.

We submit that the decree of the learned chancellor in the court below ordering the commissioner to deduct the amount of the taxes, paid 1902-1910 inclusive, from the amount still due on the outstanding purchase money notes was error.

Wherefore we submit that the demurrer of defendants, (appellants) should have been sustained, and that the decree overruling same should be reversed by this court and the cause remanded for trial in accordance with the principles of law as may be prescribed by this court herein, or that the decree of the lower court be reversed and the bill dismissed at appellees' cost.

*Geo. H. Etheridge,* assistant attorney-general, for the State.

Manifestly the court was right in overruling the demurrer. Independent of the defendants' claim about the nonliability of Carpenter for the taxes, the court had jurisdiction to grant the complainant a deed on his complying with his contract. There was no other forum that could grant this relief because a portion of the heirs of Carpenter were minors, and even had they been adults Douglass could not force them to sign a deed; and there is no other remedy afforded Douglass as to this phase of the bill. The appellants' counsel is mistaken if he thinks the only contention in this case is as to the taxes. The main object of the suit is to get title to the land and the accounting is secondary to the main relief. No method is pointed by the counsel in his brief as to how the complainant could get relief except in equity. If as a matter of fact, Carpenter agreed to pay the tax as set forth in the bill and conceded in the demurrer, and if the taxes which he owed Douglass equaled the balance of the note that Douglass owed Carpenter, why could one not be set off against the other? What would be the sense in waiting until the day of maturity had arrived when the equities could be adjusted and the question settled? What predicament would Douglass be in if he paid the money on the notes and then had to run the risk of its being in existence when he got ready? Would it not be ridiculous to assume that the expense and delay of administration had to be gone through with when the chancery court

would still have to finally pass on the whole question? The case at bar is different from the case relied upon by the counsel for the appellants; and it certainly is competent to allow parties to contract with reference to such liabilities. The demurrer on this point does not quote the whole bill. Nor does all the demurrer when considered as a whole go to the whole bill. The allegations of the bill certainly make out a charge of liability against Carpenter. It is not necessary to set out agreements *"in haec verba"* in pleading but only necessary to state the substance of it. Its form or particular words are not material so far as the pleadings are concerned. The demurrer in this case could not be sustained as a part of the bill, even if the defendants' contention were good; and the rule is that unless the pleading is wholly bad a general demurrer will be overruled. *Newell* v. *Newell,* 34 Miss. 385; *Guion* v. *Doherty,* 43 Miss. 538; *Cox* v. *Weed Sewing Machine Co.,* 57 Miss. 350.

I next submit that this appeal should not be entertained at all for the reason that on the facts in this record it is not authorized by section 35 of the Code of 1906. I call the attention of the court to the language of Judge WHITFIELD in *Bierce* v. *Grant,* 45 So. 877, where he says: "We desire to take advantage of this occasion to make some observations for the benefit of all chancellors of the state—not the learned chancellor who granted this appeal alone—with respect to the great abuse of this section 35 of the Code of 1906. There has grown up a most vicious practice of granting appeals whenever any party losing on a demurrer asks the court to allow an appeal for the purpose, as is always said, of settling the principles of the cause. It was never the purpose of this section that the chancellors out of mere courtesy or complaisance should grant appeals merely because they were asked for, or insisted upon by litigants losing on demurrers. Whenever there are difficult causes to be tried, and there are important principles never before settled in this state,

and necessary in particular to be settled for the guidance of the chancery court in the proper determination of the cause, there the chancellor should grant an appeal; but where the principles involved in the determination of the cause have already been clearly settled in this case, no appeal should be granted from an interlocutory decree passing upon a demurrer. No statute in the entire code of our laws has been so frequently, so palpably, and so grossly abused as has this one. The decree appealed from in this case is interlocutory and the law is plain and the appeal should not be entertained. I submit the appeal should be dismissed or the case affirmed.

Cook, J., delivered the opinion of the court.

W. F. Douglass and his wife, Cornelia Douglass, filed their bill of complaint in the chancery court of Kemper county, alleging that W. F. Douglass leased certain lands in 1892 from J. C. Carpenter and his wife, and that in the lease the lessors agreed to keep the taxes on said lands paid; that afterwards he bargained for the land for the sum of two thousand and four hundred dollars, to be paid in ten annual payments of two hundred and forty dollars each; that Carpenter executed and delivered to him his bond for title, and that he went into possession of the land and remained in possession thereof until he had paid all of said notes, except two, which were not due; that Carpenter agreed to keep all the taxes paid on the lands; that Carpenter failed to pay the taxes, and that complainant had been forced to pay same to prevent a sale of the lands by the tax collector; that Carpenter died intestate in 1908, without other property than the notes above mentioned; that there was no administration of his estate. The heirs at law of Carpenter were made parties defendant, and the prayer was for an accounting of the taxes due; and, when said accounting was had, the court would decree a credit on his notes for the amount of taxes paid by him, and that, upon the payment of the

balance so found due upon the notes, the court would re-
quire defendants to deliver up his notes for cancellation
and appoint an administrator, or commissioner, accord-
ing to the fancy of the court, to make and execute a deed
to him for the land. A demurrer to the bill was interposed,
which was overruled; and, no further defense being made,
a decree as entered granting complainants full, complete,
and satisfactory relief exactly as prayed for.

The bond for title was filed as an exhibit to the bill, a
mere reading of which demonstrates that complainant
was mistaken when he said, "That, by the terms and con-
ditions of said contract, the said J. G. Carpenter and M.
A. Carpenter agreed to make a warranty deed, and
agreed to keep the taxes fully paid upon said land as the
same became due and payable." There is not a word or
syllable in the contract which could, by any sort of con-
struction, be warped into a covenant to pay the taxes.

It is contended that, as the demurrer admitted the alle-
gations of the bill to be true, the court properly overruled
the same. But the answer to this contention is that the
exhibit is as much a part of the bill as the allegations. So
that it amounts to something like calling a horse a cow,
and then producing the horse to prove the assertion.

This court has held that "the vendor by title bond holds
the legal title only as trustee for the vendee, . . . while
the beneficial interest rests in the vendee. The latter,
therefore, in the absence of some special stipulation or
exceptional circumstances, is liable for the taxes." *Wat-
son* v. *Sawyers,* 54 Miss. 64, citing *Bradford* v. *Union
Bank of Tennessee,* 13 How. (U. S.) 57-64, 14 L. Ed. 49.

The bill of complaint sets out no ground for relief, and
the case is reversed and bill dismissed.

*Reversed, and bill dismissed.*

OPINION ON SUGGESTION OF ERROR.

Upon a former day of this term this case was reversed,
and bill dismissed. 61 South. 161. The case is again be-

fore us, upon a motion to modify the former judgment and remand for further proceedings in the chancery court.

The case was reversed, for the reasons given in the opinion of the court. It does, however, appear by the averments of the bill demurred to that complainant is probably entitled to a credit for the taxes paid before the execution of the bond for title, and inasmuch as there has been no administration upon the estate of the deceased obligor in the bond for title, and for the further reason that the heirs at law of deceased are minors, we now remand the cause, with directions to the lower court. Upon the payment of the money due by appellees, the court will direct a commissioner appointed by it to execute and deliver to appellees a deed to the land involved in this controversy. Appellees are taxed with the cost of this appeal.