SEWARD *v.* FIRST NAT. BANK IN MERIDIAN.

(In Banc. May 25, 1942. Suggestion of Error Overruled Sept. 21, 1942.)

[8 So. (2d) 236. No. 34917.]

Creekmore & Creekmore, of Jackson, for appellant.

Reily & Parker and **Wilbourn, Miller & Wilbourn,** all of Meridian, for appellee.

Argued orally by **Wade H. Creekmore**, for appellant, and by **R. E. Wilbourn**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Newton County was refunding its bonded indebtedness. The appellant, Dr. Seward, owned and possessed $11,000 of the old bonds, which were to be replaced by the new bonds. He turned them over to the appellee, the First National Bank, with authority to make the exchange. The exchange was made through the agency of Irving-Harris Corporation. It developed that $6,000 of the refunding bonds turned over to Dr. Seward through this channel were forgeries, resulting in a loss to him of their face value. He brought this action against the bank to recover the loss, on the ground that the forged bonds were negligently accepted by the bank; that by the exercise of reasonable care and diligence the bank would have detected the forgery. The names of the president and clerk of the board of supervisors were forged to the bonds. The trial resulted in a verdict and judgment for the bank, from which Dr. Seward appeals.

There was no harmful error committed against the appellant in the trial of the cause. The majority of the

court agree that the cross-examination of Dr. Seward by one of the bank's counsel, and his argument to the jury, both set out in the dissenting opinion of Judge Griffith, constitute error, but were without harm to the appellant, especially in view of the fact that the great preponderance of the evidence was in favor of the verdict of the jury.

The writer is of opinion, in which the Chief Justice concurs, that the court below erred in refusing the bank's request for a directed verdict, and feels constrained to give his reasons therefor, on the idea that they may be of some value to the Bench and Bar. Of course, if the bank was entitled to a directed verdict, the other questions would disappear.

We have here bailment for hire. The authorities are practically unanimous that, unless made so by statute or express contract, such a bailee, is only required to use reasonable care and diligence in carrying out the contract of bailment. There will be found a full discussion of the question, and citation of authorities, in 6 Am. Jur., chapter on Bailments, sections 240 to 246, inclusive. There is no decision of our court directly in point on its facts, but the following throws some light on the question: In Greenville Insulating Board Corporation v. McMurray, 164 Miss. 809, 145 So. 730, the court held that the bailee of personal property is not an insurer, nor liable for the value thereof, when destroyed without his negligence; and that the contract of bailment, to change the obligation of bailee to that of insurer, must expressly so provide.

Appellant recognized in his declaration, in plain and unmistakable language, that the measure of the bank's duty in handling the bonds was ordinary care and diligence, and that the alleged failure of the bank to exercise such care and diligence alone was the foundation of the suit. The evidence was addressed solely to that question, and so were the instructions for both parties. It is too late now for appellant to try to make a different case in

this court from that tried in the court below. He cannot put the trial court in error for trying the case on the theory he invoked himself. In other words, he cannot try one case below, and an entirely different case in the Supreme Court. Wilson v. Zook, 69 Miss. 694, 13 So. 351; Liverpool & L. & G. Ins. Co. v. Van Os, 63 Miss. 431, 56 Am. Rep. 810.

There was no evidence of real substance tending to show that the bank failed to exercise reasonable care in handling the bonds. Of course, if that be true, the bank was entitled to a directed verdict. The following are the undisputed facts:

It was the understanding between the board of supervisors and the bank that the latter should handle the refunding bonds. That plan, however, was abandoned, and the handling and delivery of the refunding bonds was entrusted to the Irving-Harris Corporation. Dr. Seward knew this and acted upon it.

The board of supervisors, by an order on its minutes, appointed the bank "to act as an exchange agent in the matter of refunding the bonded indebtedness of Newton County." The order provided that the bank should calculate the accrued interest on the bonds, in order to arrive at the basis of exchange, and be "guided solely by the instructions of the Irving-Harris Corporation of Meridian as the basis of exchange and allocation of maturities." And its services therefor should be paid by the Irving-Harris Corporation.

At the same meeting of the board an order was made appointing the Irving-Harris Corporation "as paying agent for the refunding bonds." The order recites that R. S. Majure, attorney for the county, had "contracted with T. S. McDonald, trading as Irving-Harris Corporation of Meridian, Mississippi, to carry out and effect the actual exchange of the bonds to be refunded." Which employment was ratified. The order provided that the Irving-Harris Corporation should make "cash settlement of accrued interest on bonds so ordered refunded;" and

required of the Irving-Harris Corporation the execution of a "valid indemnity bond in the sum of $10,000.00, to be approved by the President of the Board of Supervisors."

Dr. Seward's letter to the bank demonstrates that he knew the refunding proceedings were in the hands of the Board of Supervisors and its attorney, and of the Irving-Harris Corporation, including the handling and delivery of the new bonds in exchange for the old ones. In his letter to the bank he uses this language: "You will please turn these over to Irving-Harris Corporation when they have turned over to you in exchange the following bonds," describing them, giving the denominations, rate of interest and when payable. In other words, Dr. Seward, by clear implication, said to the bank that it would find the bonds which he was to take in exchange for his in the custody of the Irving-Harris Corporation. Putting it differently, Dr. Seward said to the bank, "Deliver my bonds to the Irving-Harris Corporation, and take in exchange therefor bonds which they will deliver to you." This means that if Dr. Seward was relying on anyone to pass on the validity of the bonds taken in exchange, it was the Irving-Harris Corporation, and not the bank.

The forgery of the bonds was so cleverly done that it was with great difficulty it could be detected. One Barksdale, who was the chief manager of the affairs of the Irving-Harris Corporation, forged the bonds. He forged some for his own use, and borrowed money on them from the appellee bank, which was never repaid. The bank took them without any suspicion that the bonds were not valid.

Grenada Bank v. Moore, 131 Miss. 339, 95 So. 449, is not in point. In that case the bank accepted a deposit of the customer's securities under a bailment contract for hire. The bank undertook to safely keep the securities. One Taubert, an officer of the bank, took the securities and hypothecated them in various places for money

which he used for his own purposes—in other words, he embezzled the securities. Citizens Bank of Coldwater v. Callicott, 178 Miss. 747, 174 So. 78, is not in point. There the bank invited and accepted a special deposit (diamonds for safe-keeping). The bank put the diamonds safely away, except that the officers and emploÿes of the bank had access to them. When demand was made for their return they could not be found. It will be observed that in both cases there was an express contract to safely keep and return. In the present case there was neither an express nor an implied contract on the part of the bank to see that the bonds were not forged.

Affirmed.

**Griffith, J.**, delivered a dissenting opinion.

Appellant had had negotiations with a concern called Irving-Harris Corporation by which an exchange was to be made of $11,000 of bonds owned by appellant for certain other bonds, later to be mentioned, but instead of sending his bonds direct to Irving-Harris Corporation, thereby trusting that concern to make the exchange, appellant sent them to appellee bank accompanied at the same time by the following letter, addressed to the bank:

"Enclosed find Newton County bonds as follows: Junior College Improvement 5½% Numbers 24, 31, 32, 33, 39, 40, 41, 42, 67, 68, 81. Also my check payable to Irving-Harris Corp. in the amount of $25.00.

"You will please turn these over to Irving-Harris Corp. when they have turned over to you in exchange the following bonds: Newton County Federal Aid Highway 4½% Refunding $1000.00 due 7/1/47, $1000.00 due 7/1/48, $4000.00 due 7/1/51. Newton County Supervisor's Road Dist. # 3, 5% refunding: $500.00 due 7/1/62. All minus July 1, 1937 coupons, and Kemper County 4¼% General Obligation Funding: $500.00 due 9/1/40, $500.00 due 9/1/50, $500.00 due 9/1/55, all minus Sept. 1, 1937 coupons.

"When this exchange has been made you will please mail me the above described bonds." Signed D. Seward.

The bank admits the contents of the letter, and that it acted in the transaction for hire, and that in the exchange it received and accepted $6,000 in forged bonds.

There is a distinction between a general contract of bailment and a special contract of bailment, and wherein the special contract contains or embraces directions under which the bailee is to handle or dispose of the property in a particular manner according to the directions. This principle was expressly recognized and enforced by this Court in Miller v. Bank of Holly Springs, 131 Miss. 55, 68, 95 So. 129, 31 A. L. R. 698, and there the court said that in the case of a general contract of bailment the care to be exercised by the bailee is fixed by law, while the obligation under a special contract of bailment is fixed by the contract itself.

In that case War Stamps were delivered to the bank under a special contract of bailment by which the stamps were to be kept in the bank's Corliss safe instead of the bank's vault. The bank did not carry out the contract to put the stamps in the Corliss safe. The vault of the bank was robbed, but the burglars did not succeed in getting into the Corliss safe, wherefore the bailor's stamps would not have been lost had the bank carried out the terms of the special contract; and the court held that whether in handling the stamps as it did the bank was or was not negligent had no bearing on the question of its liability,—that the bank was liable on the special contract and because the contract was not performed according to its terms.

In Merchants' Bank v. Affholter, 140 Ark. 480, 215 S. W. 648, appellees deposited a sum of money with the bank with directions to the bank to use the money to purchase for appellees registered United States bonds, which bonds were then to be held by the bank for appellees until called for by appellees. Under an honest mistake as to the directions, the bank bought coupon bonds

instead of registered bonds, and after the receipt of the bonds by the bank and while holding them for appellees, the bank was robbed and the bonds stolen. The court held that the bank was liable to appellees because it had not carried out the instructions or directions; that the coupon bonds had not become the property of appellees, for the reason that these bonds were of a different kind or class as compared with those which appellees had specially directed should be purchased with the money; that it was not a question of negligence but one of contract and that there was liability simply because the contract had not been performed. A fortiori had the bank taken forged bonds instead of genuine registered bonds, it would have been liable and negligence would have had nothing to do with the determinative issue.

So in the case here before us, the bank was directed to exchange the bonds placed in its hands for other bonds specifically set out and mentioned in the contract, but instead of complying with the directions, with its contract obligation, the bank exchanged the bonds for only five thousand dollars of the bonds of the kind it was directed to accept, and as to the other six thousand dollars it accepted forged bonds, which were no bonds at all. Let us suppose that the directions had been to deliver the eleven thousand dollars in bonds to the Irving-Harris Company when that company had delivered to the bank eleven thousand dollars in cash, which cash the bank was further directed to send to the bailor by express, and that the bank had received five thousand dollars in cash and six thousand in counterfeit money, all of which was thereupon sent by express to the bailor. Would any legal mind be willing to subscribe to the proposition that the bank had complied with the contract and its directions, however much the counterfeit had the appearance of genuineness?

The distinction between the duty, and the common-law liability arising out of that duty, as regards the care required in safely keeping the bonds, the holding of them

in possession, as to which the issue of negligence vel non is admissible, as compared with the contract obligation in respect to the manner of disposal of the bonds by the bailee according to the bailor's directions, is succinctly pointed out in Harlan State Bank v. Banner, etc., Coal Corp., 202 Ky. 639, 261 S. W. 16. There the court said: "The question for decision depends upon the bailee's power of disposal rather than its duty to preserve the deposit, and this power is the same whether it acted as bailee gratuitously or for pay. The bailee's duty to preserve the deposit for redelivery to the bailor is not absolute, and demands of him only due care and good faith, but he has no power to dispose of it except to the bailor or in accordance with his directions. . . . While the bailee does not insure that he will safely keep and return the deposit, he does bind himself absolutely that he will not voluntarily dispose of it except to the bailor or in accordance with his directions." And there the court cites 3 R. C. L., p. 104, wherein the text illustrates the principle by references to the cases which hold that where bonds are left with another with instructions not to deliver them to any person except on the written order of the bailor, the delivery on a forged order does not relieve the bailee, and that the point is not whether he used due care, but that he did not comply with the contract. Where is the difference in a delivery on and for a forged order, and a delivery on and for forged bonds? And see 6 Am. Jur., p. 311, 6 C. J., p. 1111, and 8 C. J. S., Bailments, Sec. 22, p. 256.

Inasmuch as the bank was not charged with the duty of exchange the property for the specified bonds regardless of the particular person from whom the specified bonds were to be obtained, but the directions were to make the exchange with a particular person named in the contract of deposit, and inasmuch as a check was enclosed payable to the particular other person, showing on the face of the directions that the other person, here the Irving-Harris Company, was the particular

other party concerned in the transaction and that the deposit was being made in pursuance of some anterior agreement between the depositor and the Irving-Harris Company, it may be that the precise attitude which the law will ascribe to the defendant bank is that of a depositary or agent in escrow, and in that case the authorities are uniform that the depositary or escrow agent must look to the escrow agreement as the sole expository of his powers and duties and that he must act strictly in accordance with the terms of that agreement and is liable for any substantial departures therefrom, 30 C. J. S., Escrow, Sec. 8, p. 1203, citing, among others, Nickell v. Reser, 143 Kan. 831, 57 P. (2d) 101; and that where the property is delivered by the escrow holder without compliance with the specified terms of the escrow agreement, the delivery is inoperative and amounts to a conversion by the escrow agent. See 19 Am. Jur., p. 439 et seq. Compare Mississippi State Highway Comm. v. Anderson, 183 Miss. 458, 465, 184 So. 450.

The importance of this rule and that the escrow depositary shall be charged with a strict compliance with the escrow agreement is emphasized by the fact that there are a multitude of transactions made every day which require services of a third party as a depositary by and through which the transfer and delivery of papers and valuable documents may be effectuated according to the legitimate purposes and intent of the parties, and that banks are the usual means or agents selected for this service; and where acting for compensation, as the bank in this case admits it was doing, it should be held liable when it parts with or delivers the deposited property in a manner short of a compliance with the strict terms of the depositary contract. It would seem too plain for argument that an escrow depositary has not complied with the strict obligations which it undertook under the escrow contract, and that for hire, when it has parted with the property in exchange for forgeries,—when it has deliv-

ered the property in exchange for that which is in fact nothing.

Although appellant set forth the written contract of special bailment in his pleadings and also alleged that six thousand dollars of the bonds accepted by the bank were forgeries, and although the contents of the contract of special bailment and the acceptance of the forgeries by the bank were admitted by it, appellant did not request a peremptory instruction, but went to the jury on the issue of negligence, as if the contract had been one of general bailment; and it is said now that appellant must be held on appeal strictly to the theory which he presented to the jury. This is the precise contention which was made and was rejected in Southeastern Express Co. v. Namie, 182 Miss. 447, 181 So. 515. In that case the plaintiff sought to recover on a charge of negligence and went to the jury on that theory but had in fact failed to prove any negligence, and the court said that inasmuch as the plaintiff was entitled to recover under the contract, the allegations as to negligence were surplusage, and that having alleged and proved enough to recover on the contract he was not to lose his case because he had failed on the charge of negligence.

The rule that a party on appeal shall be held to the theory upon which he presented his case in the trial court goes no further than the reason which gives it life. The reason is that had the case been presented to the trial court upon a different theory, the opposite party might have met and overturned that theory by adequate proof. But when all the facts necessary to a recovery by a plaintiff, under the law of the land, are admitted by the defendant and therefore cannot be overturned by him, all that remains is to apply the law, and this calls for the exercise by the court of "the right to ignore the theory upon which the case was tried, in order to preserve the legal rights of the parties disclosed by the record of the pleadings and testimony in the case," as was said by this court in Yazoo & M. V. Railroad Co.

v. Hawkins, 104 Miss. 55, 74, 61 So. 161, 451, 452. The theory of the case is a doctrine which is confined to the field of facts,—it is without potency to alter the law of the land. As to the law, that is a field which belongs to the court, and the parties may not modify or control it whether by mistake or concession, or even by agreement. Compare Mississippi P. & L. Co. v. Pitts, 181 Miss. 344, 359, 179 So. 363, and Quitman County v. Stritze, 70 Miss. 320, 322, 13 So. 36, and Wilson v. Alabama, G. S. Railroad Co., 77 Miss. 714, 720, 28 So. 567, 52 L. R. A. 357, 78 Am. St. Rep. 543.

It is said, however, that inasmuch as appellant in the present case did not request a peremptory instruction, there is no ruling adverse to appellant upon which a reversal can be based. But there was a ruling adverse to appellant and one which was not only grossly erroneous but was grossly prejudicial to him, and to which he objected with all vigor and earnestness.

On the cross-examination of appellant, one of counsel for the defendant bank asked him this question: "Isn't it a fact that you have agents in various counties in this State and make a business of buying property that has been sold for taxes?" The objection to the question having been overruled, counsel for the defendant further pursued the matter. On the argument to the jury the same attorney for the bank is alleged to have said that the jury "should judge a man by how he treated his fellow man, and should judge the plaintiff by his acts in buying the homes of the poor over the State at tax sales, who, because of their distress, were not able to pay their taxes." That is the argument which the court should have anticipated would be made when the quoted testimony was admitted, and that that was the purpose for which the defendant sought and obtained its admission; and it is to beg the question, therefore, when the reply made here is that no special bill of exceptions was taken to the argument. The erroneous evidence was there, and that it was grossly inflammatory and preju-

dicial to appellant no more than the statement of it is necessary to be made.

Of this question wherein collateral matters are unduly and prejudicially pursued on cross-examination, this court said in Sanders Cotton Mill v. Moody, 189 Miss. 284, 300, 195 So. 683, 688: ''It may be that the methods of this mill . . . may, if true, have made this concern an undesirable member of the community; but there is too much danger in allowing examinations to go to such lengths that the particular merits may be obscured and that passion may be aroused by these extraneous considerations. As already otherwise stated, and under whatever principle it may be that evidence is adducible, and even on cross-examination touching the bias or interest of witnesses, it should never be permitted to proceed so far into collaterals as to raise a doubt whether the verdict is upon the real issues or whether upon general principles that the plaintiff of the defendant, one or the other, is by his general character or conduct deserving of a verdict against him, be the precise facts what they may.'' If what was done in the present case does not fall within that announcement, it is difficult to see what else would. And it is a principle which should be steadfastly maintained in the interest of fair and impartial trials, the security of which courts must consider as a fundamental duty in their existence, and that they should do no less as the representatives of an honorable people. It is the principle upon which this court acted in the recent case, Mississippi Power Co. v. Stribling, 191 Miss. 832, 846, 847, 3 So. (2d) 807. The judgment should be reversed, even though the issue submitted to the jury was a false issue, for the return of the verdict shows that it was not unanimous, which of itself demonstrates that it cannot be said that, without the inflammatory and prejudicial matter, the verdict would certainly or undoubtedly have been the same.

**McGehee, J.,** concurs in the above dissent.