## LONG *v.* GRIFFITH.

[74 South. 613, Division B.]

1. BROKER. *Commissions. Hearsay evidence.*

   In a suit by a broker for commissions on a land sale, it was error to admit statements made by the buyer regarding the transaction, in the absence of the broker, such evidence being hearsay evidence.

2. DEPOSITIONS. *Notice to adverse party. Admissibility in evidence.*

   Depositions taken without notice to the adverse party are not admissible in evidence.

3. BROKERS. *Compensation. Completion of transaction. Fault of owner.*

   Where a broker makes a sale for the owner of lands in accordance with his contract, and the buyer is ready to carry out the trade, but the owner rescinds the sale, the broker is entitled to his commission.

Appeal from the circuit court of Clay county.

Hon. T. B. Carroll, Judge.

Suit by J. C. Long against T. J. Griffith. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Roberds & Beckett,* for appellant.

Appellee does not deny the contract, in writing, and as modified by oral agreement and that the sale was immediately made in pursuance of that contract to the purchaser Taylor brought there by Long and that the sale was effectuated by Long's efforts under the contract. It is not denied that both parties to this contract fully understood that Long himself was not to buy the land, but was employed as agent to sell the land, and that all he could get over the agreed price was to be his commission for the sale. We admit that the contract of agency was unskillfully drawn. But in view of all the circumstances, and the testimony of both parties to it, there is absolutely no doubt as to its meaning, or as to what the parties both understood it to mean. *Turner* v. *Asher,* 2 Miss. 736; *Atkinson* v. *Sinot,* 67 Miss. 502; *Hart* v. *Gardner,* 74 Miss. 153.

Appellee does not deny that the man Griffith, appellee, made no *bona-fide* attempt to carry out the contract of sale with Taylor by enforcing its provisions. It is admitted that the contract of sale between Griffith and the purchaser Taylor, was cancelled, without any effort on the part of Griffith to secure its enforcement. Appellee, in his brief attempts to show that Taylor did not have the actual cash, in West Point to make his payment on the day it was due, but he does not deny that if Griffith had insisted, Taylor would have carried out the contract.

Our contentions as to the improper admission of evidence and of the Taylor deposition are not noticed by counsel for appellee. We think these errors were seri-

ously urged by us and ought not to be ignored by the court. The trial court, it seems to us, committed gross error in admitting such a document as the Taylor deposition, in the face of the testimony of Mr. Roberds that the deposition was not taken with any sanction of ours, but that in writing to the lawyer, Piper, we were asking for our private information. All that incompetent evidence was most damaging to our side of this case in the minds of the jury, and the repeated overruling of our legitimate objections thereto, by the court was doubtless damaging to us in the minds of the jury. If there had not been even more serious error, we think the case ought to be reversed for these errors.

Referring to the legal phase of the argument of learned counsel for appellee, it will be seen that he places his reliance very largely on the case of *Johnson* v. *Sutton,* 94 Miss. 544, 49 So. 970.

We cited this case in our brief, considering it useful in showing the reasoning upon which we rely. In that case, there was never a completed sale, because the seller undertook to do certain things, which he was not bound in his contract with the real estate agent to do, and failed to do them, and hence the sale fell through. The purchaser refused to complete the sale for the reason made in good faith that the seller had never produced the land up to the quality which they had contracted to buy. The agent had no right to insist that the seller produce that quality of land, because there was no such provision in his contract. That was a gratuitous obligation assumed by the seller.

The Mississippi case of *Hancock* v. *Dodge,* 85 Miss. 228, amply justifies our contention that it was entirely legal and binding for Long and Griffith to modify their written contract by subsequent oral agreement.

The case of *Myers* v. *Coleman,* 93 Miss. 226, cited by counsel for appellee, does not decide any question except that in that case the real estate agent was acting for the purchaser of the land and not for the seller,

hence there was no promise to pay anything by the seller.

None of the cases cited by learned counsel for appellee are really in point when carefully read. The Georgia case of *Humphries* v. *Jackson,* 5 Ga. 340, 63 S. E. 248, is authority for the very propositions for which we are contending. 58 S. E. 502 (Ga.); 60 S. E. 301 (Ga.); 34 Atl. 1073 (N. J.).

"The relation is a confidential one and its incidents are to be given effect in accord with the purest dictates of mutual good faith, citing, 60 S. E. 372 (Ga.); 60 S. E. 283 (Ga.).

"A contract of sale binding both purchaser and seller is a sale within the meaning of the rule applicable to such relations. Citing, *Rice* v. *Mayo,* 107 Mass. 550." Case of *Flynn* v. *Jordal,* 124 Iowa, 457.

We submit that this case ought to be reversed and judgment entered in this court for the amount asked for and interest, under the provisions of section 4919, Code of Miss. 1906.

*Gates T. Ivy,* for appellee.

There are two contracts in this case which will receive attention of the court; one a contract between J. C. Long, the appellant, and T. J. Griffith, the appellee; the other a contract between T. J. Griffith, the appellee and one U. F. Taylor, a proposed purchaser of certain lands concerned in this suit.

The first contract was entered into on the evening of August 1, 1914, in the office of Roberds & Beckett, counsel for appellant, the latter contract was likewise entered into in the same office on the same evening, but subsequent to the first.

It is the contention of appellant that there were two contracts, one in writing executed on August 1, 1914, between appellant and appellee, with reference to the amount of commissions to be paid to appellant, and an-

other oral contract entered into between the parties immediately after the execution of the written contract with reference to the time of payment of commissions, and that by virtue of the terms of these contracts, it was only the duty of appellant to produce some party ready, willing and able to buy the lands proposed by appellee, and that such was done by the appellant in full performance of his contract; whereupon the commissions became due and payable.

It is the contention of appellee that there was only one contract, namely, that entered into in writing on the evening of August 1, 1914, and that under the allegations of the declaration no recovery could be sought save that for full commissions and under the terms of the written contract, which by the declaration, is alleged to have been breached.

There can be produced no authority holding that the principal is liable for commissions where the same are payable out of the proceeds or where the contract calls for the consummation of a sale. The case in the Northwestern reporter cited by counsel is the only case really presented by them, in support of their doctrine insofar as it may be applied to this case, but, when that case is read, it at once appears that the broker was simply employed as a middleman to procure a purchaser in which event it was held that the commissions were due when the broker produced a party ready, willing and able to comply with the terms imposed by the principal. However, it may be here remarked that according to all the cases, the party, at the time he enters into the contract, must be ready, willing and able to comply with its terms and maturity.

It would appear that the case of *Johnson* v. *Sutton* as reported in 94 Miss. at page 544, 49 So. 970, settles the principles invoked by the appellee.

The contention of the appellant that his commissions were due when Griffith entered into this contract in which a mere stranger simply promised to pay, is made

the more untenable when the testimony of the appellant himself as to the payment of his commissions is considered. Aside from the Johnson-Sutton case, and any principle above invoked, and granting that there was a subsequent oral contract between Griffith and Long, or that there could have been a waiver of the written contract, then it is urged that the testimony of the appellee refutes the idea that he ever expected, or that it was contemplated by either of the parties, that the commissions were due at the time of the execution of the Griffith-Taylor contract. Long, himself, testified that he was not to be paid any more commissions until Taylor had made the four thousand dollar payment of September 15, 1914, whereupon Griffith agreed to pay him seven hundred and fifty dollars. How can this statement consist with the contention of counsel that Long's commissions were due, as intended by the parties, at the time of the Long-Griffith contract?

It would seem that the question of an implied contract is not involved in this case. The law sets at rest the hope of such contention. There cannot be both an express contract and an implied contract. A recovery cannot be had upon *quantum meruit* where there is an express contract, either oral or written. Long had no right to recover on *quantum meruit* for seven hundred and fifty dollars because the same was not alleged in the declaration and was not sought by the pleadings. That such a promise was ever made only appeared from Long's testimony, and not by allegation, and in fact was without consideration.

The multitude of notes and divers authorities cited by counsel for appellant have been dealt with in the introduction to this brief where the principle is conceded that in all cases where the agent is employed as a middleman the commission is due upon the execution of a contract satisfactory to the principal. I have referred to these cases and find in every case consulted the agent was simply a middleman employed to produce a pur-

chaser for the land, I observe authority from the state of Arkansas is cited, and in order that the distinction made above in this brief may be kept in mind, I now quote from an Arkansas case decided in 1906, as reported in 98 S. W. 683, *Lewis* v. *Briggs,* as digested in Vol. 1, 1908A. Amer. Digest. "A broker under a contract to procure a purchaser of real estate which stipulates that the owner shall receive a specified sum out of the price and that the balance shall be paid to the broker as his commissions, does not make out a case for a recovery of his commission by showing that he secured the contract with solvent parties to purchase the land, but he must show either that the owner received some part of the balance of the price to which the broker was entitled, or that the parties who agreed to purchase were ready, willing and able to purchase, and were prevented by default of the owner." Thus, it will be seen that even where a man is employed as a middleman merely, and though his commissions are to be paid out of the proceeds above a certain net price, yet, the commissions are not due unless it be shown that the principal has actually received something over and above the net price due him which were to belong to the agent or else it must be shown that the purchaser having promised and contracted to pay for at the time fixed in his contract for payment, then ready, willing and able to make the payment, specified in his contract. 63 S. E. Rep. 248, 5 Ga. 340; *Humphries & Jackson* v. *Smith,* 1 Amer. Rep. 49; *Kimberly* v. *Henderson* (Md. Case); *Hyams* v. *Miller,* 71 Ga. 608-618; *Riggs* v. *Turnbull,* reported in 8 L. R. A. at page 825 (Md. Case); *McGavock* v. *Woodlief,* reported in 15 Law Ed. at page 885 of U. S. Rep; *Flynn* v. *Jordal,* 124 Iowa 457, 100 N. W. 326.

If the broker produces no evidence even tending to show that his proposed purchaser is financially able to make the purchase, then he is entitled to no commissions. *Ceidler* v. *Walker,* 41 Mo. App. 118-212; *Palmly*

v. *Head,* 33 Ill. App. 134; *Levy* v. *Kottman,* 1 Miss. ——; *Condict* v. *Cowdrey,* 139 N. Y. 274. Since counsel for appellant have cited from the state of Nebraska the case of *Lunney* v. *Heally,* 44 L. R. A. 593, 56 Neb. 313, I deem it wise to call the court's attention to the case of *Dorrington* v. *Powell,* 52 Neb. 44, holding that: "Commissions are not recoverable for merely finding a purchaser upon a sale never consummated where there is an option contract for payment of commissions on the making of a sale or disposition of the property." *Power* v. *Kane,* 5 Wis. 265; *Lindley* v. *Fay,* 119 Cal. 239, 51 Pa. 333; *Hanna* v. *Espalla,* 42 So. 443 (Ala. case 1906). All prior agreements merge into the written contract. *Penn* v. *Smith,* 9 So. 611.

If an express contract exists, no contract will be implied and the action must be on the express contract and the recovery must be under its terms, and not upon a *quantum meruit* when no count was contained in the declaration, it is believed these authorities on this question really need not have been cited.

Etheridge, J., delivered the opinion of the court.

T. J. Griffith owned certain lands near West Point, Miss., containing about six hundred and eighty acres. J. C. Long was a real estate man in West Point, Miss., and Long approached Griffith with a proposition of making a sale of Griffith's place. Griffith agreed that Long should sell the place if he could get fifteen dollars per acre plus five hundred dollars for the place and also that any excess of that amount was to go to Long as compensation for his services in the matter. Long secured one Taylor from New Dover, Ohio, to buy the premises in question. A contract was drawn up between Griffith and Long which reads as follows:

"This contract made and entered into this day by and between Tom Griffith and J. C. Long witnesseth: The said Tom Griffith has appointed and constituted the said

J. C. Long his agent with full power to sell his (Griffith's place, consisting of about six hundred and eighty acres located about four miles west of Muldon, Mississippi, in Clay county, said state, provided the said J. C. Long shall pay to the said Tom J. Griffith fifteen dollars per acre for said land, and in addition to said price five hundred dollars, and provided the sale is made by August 1, 1914; any amount realized by said J. C. Long from the sale of said land over and above the said fifteen dollars per acre, and the additional five hundred dollars is to belong to the said J. C. Long as his profits for the sale of said land.''

This contract is signed by both parties. On the 1st day of August, Long got Griffith and Taylor together and consummated a sale of the premises in question for the sum of thirteen thousand dollars. Contract was signed by both Taylor and Griffith, and by its terms Taylor paid one thousand dollars in cash and was to pay four thousand dollars on the 15th day of September and the balance on the 1st day of January, 1915. This contract was executed in duplicate, one thousand dollars paid over, of which two hundred and fifty dollars was paid to J. C. Long. Thereupon Taylor returned to his home in Ohio, and about the 5th day of August wrote Griffith that on returning home he found that the German and French war had broken out and that the banker who had promised to let him have the money with which to finance the transaction was reluctant to carry out the contract, and Taylor asked Griffith how he (Griffith) was situated to carry the deferred payments or a part of them; that under the condition as then existing it would be difficult to sell Taylor's property, and he would like to hear from him about the matter. Thereupon Griffith wrote Taylor telling him that in view of the situation he would release him from his contract if Taylor so desired. Afterwards, Griffith wrote Taylor that he would make the deed in accordance with the contract, and Taylor came to West Point, reaching there on

the 16th day of September, being detained or delayed in reaching there by train, by which he came in on by way of Birmingham, having stopped at Columbus the night before. Taylor then sought Griffith and wanted him to carry him out to his place that he had bargained for, he having his wife with him at the time, who desired to see the place. Griffith did not have the conveyance to carry him to the premises, and Taylor then went to Long, who agreed to carry him out the following morning. In the meantime, on the 16th, Taylor went to another real estate man who had a Ford car, and procured this gentleman to carry him and his wife to the premises, and asked this agent as to the law of days of grace on contracts in Mississippi. On the following day, Taylor went to Griffith and approached him about the amount of commissions due Long, which were stated to him by Griffith. Taylor then proposed that they rescind the transaction and divide Long's commissions. In other words, that they make a new deal by which Long would be eliminated and the amount of his commission divided between the contracting parties, which Griffith declined to do. On the 18th, Taylor went to Griffith and tendered him a letter declining to carry out the trade and requesting a return of the one thousand dollars, paid as initial payment. This one thousand dollar payment under the terms of the contract originally entered was to be forfeited if Taylor failed to carry out his contract. Griffith agreed to return the one thousand dollars, and Taylor left, and he (Griffith) returned the one thousand dollars about a week thereafter.

Long was not consulted by either Taylor or Griffith in the rescission of this contract and, learning of the rescission of the trade, filed this suit. During the term at which the trial took place, a motion was made by Long to continue the case for the purpose of taking Taylor's deposition. During the hearing on this motion, Griffith agreed that Taylor would swear what was stated in the affidavit for a continuance what they ex-

pected to prove by him; that is to say, that he (Taylor) would have carried out his contract had Griffith not released him. There is no proof that Taylor could not have carried out the contract had Griffith held him to the contract. There was much incompetent evidence in the nature of hearsay, being statements made by Taylor and Taylor's wife bearing on the matter not made in the presence of Long, which was objected to and the objection overruled. There were also some questions and answers filed in the court by an attorney in Ohio to whom questions were sent by Long's attorneys, as they say, for the purpose of eliciting what Taylor would testify to for the purpose of taking his deposition. The attorney in Ohio, instead of furnishing the information to Long's attorneys, proceeded without authority and without notice being served on Griffith to take the questions and answers of Taylor in the form of deposition and filed them in court without sending them to the attorneys of Long. The court permitted this alleged deposition to be introduced by the defendant over the objection of the plaintiff. Of course, the statements made by Taylor to Griffith and to the real estate agent, Mr. Stanley, and the alleged questions and answers of Taylor taken without notice, constitute error. However, in our opinion on the record in this case there was no defense made by the defendant to Long's suit. The defendant himself testifies as to the terms of the contract and to the effect that he rescinded the contract without the consent or knowledge of Long, and we think on his testimony, and the admitted statement of Taylor, Long was clearly entitled to recover for the amount sued for, to wit, two thousand and fifty dollars. Accordingly, the case is reversed, and judgment entered here for the appellant for said amount and all costs.

*Reversed and judgment here.*