JOHNS-MANSVILLE PRODUCTS CORP. *v.* CATHER.

In Banc. Feb. 13, 1950.

No. 37358 (44 So. (2d) 405)

**Brandon, Brandon, Hornsby & Handy,** for appellant.

L. A. Whittington and Jos. E. Brown, for appellee.

**Brandon, Brandon, Hornsby & Handy,** for appellant in reply.

**Smith, J.**

Suit was brought by appellee against appellant in the Circuit Court of Adams County for personal injuries alleged to have been suffered on June 9, 1948, while appellee was in appellant's employ as an "off-bearer" or "take-off" man in the latter's plant wherein were manufactured wood products.

Appellees job was to take off a "slat machine" certain manufactured boards, after they had been ripped; turn around and stack them on "dollies"; and when about ninety such boards had been so stacked, to push the "dollie" out of the way, so that an empty "dollie" could be moved up. These stacks would be about five feet high when the load was completed. These boards were "bumped" into bundles of four and then placed on the "dollie". They were fed into the "slat machine" two at a time, sawed in two pieces, and thus became four boards when appellee took them off of the machine, turned, and placed them on the "dollie". This operation, according to appellee's evidence, resulted in trimmings, shavings, and fragments of the boards accumulating under the feet of the "take-off" men, and appellant provided no special men to clean them up, occasionally pick-

ing up persons around the plant to do so. According to appellee's evidence, it was not his duty to do this cleaning up; he had never been instructed to do it; and could not do so without interfering substantially with his necessary duties as "take-off" man. As a consequence of this condition, and these circumstances, on the date and at the time of his injury, these chips, fragments, trimmings, and shavings had accumulated on the floor in the restricted area in which appellee was required to work to a depth of approximately five inches, rendering an unstable footing precarious, so that, (operating at a very rapid speed as he was then required to do,) in turning from taking the boards off the machine to stack them on the "dollie" at his back, he slipped on this accumulated debris and wrenched and injured his back severely. He testified that he had no power or authority to control the speed of the slat-machine's operation.

Appellant contradicts most of this testimony by its own witnesses, who are not always in agreement on substantial circumstances, however. Nevertheless, in substance, its testimony was to the effect that the operation produced only soft shavings on which it was impossible to slip as claimed by appellee; that it was the duty of appellee to clean up the debris, for which he had ample time and which he had been instructed to do; that sufficient facilities had been provided for cleaning up if they had been used, which appellee denied; that, as a matter of fact there was no such piled-up debris as appellee represented; that the operation was moving at a very slow rate of speed. It claims that no actionable negligence on its part was proven.

Appellant introduced into the record at the trial specimens of the boards, and some shavings, selected by its employees long after the date of the injury, with no proof or pretense that they were picked up from the floor on June 9, 1948. Hence, they are of little value in demonstrating the kind of chips, trimmings, and shavings that

were on the floor at the date of the injury. The jury probably so considered them.

At any rate, appellee was given leave of absence by the proper official, after he had been sent to the company doctor, and, on his return to employment was assigned light work, until he was discharged on instruction of the plant supervisor. In this connection, it is interesting to note this series of questions and answers, when a witness for appellant was on the stand:

"Q. Who told you to let him go? A. The supervisor.

"Q. Who is he? A. Mr. Morgan.

"Q. Why? A. He was not able to do all the work.

"Q. Didn't you tell him it was on account of that back injury? A. We didn't go into that. I knew he couldn't do all the work because of the injury on the slat bed.

"Q. It was understood that that was why you were letting him go? A. Yes.

"Q. That it was on account of his back? A. That is right."

It will thus be seen that the jury had before it a clear issue of fact and that their verdict for appellee was on conflicting testimony as to the issue of liability. The declaration charged that appellant did not exert reasonable care to furnish appellee with a reasonably safe place to work, while appellant argued that his injury was the result of a mere accident occasioned by a risk ordinarily incident to his employment. As an illustration of the care with which appellant submitted its case to the jury, even as to smaller details, we quote the following instruction granted it: "The Court instructs the jury for the defendant that if you believe from the evidence that it was one of the duties of the plaintiff to clean up around the machine where he was working and that he had reasonable time to do so, then the jury shall return a verdict for the defendant." The jury returned a verdict for the plaintiff, appellant here, thereby accepting as true the version of appellee, not only on that

particular point, but on the merits generally. ██ █
Since we cannot say that this verdict does not have substantial evidence to support it, and is not manifestly against the great weight of the evidence, we have no authority to disturb it.

██ █ Appellant complains of a certain instruction granted appellee, about which we have had some discussion as to its sufficiency in directing the jury's attention to the issue of whether or not appellant took reasonable care to furnish appellee with a reasonably safe place to work. However, that phase of the law was thoroughly covered by instructions granted appellant. Since all instructions must be read together, we find no reversible error here. This issue was thus also fairly and sufficiently submitted to the jury, and the verdict was against appellant.

Appellant cites several cases to sustain its position as to the foregoing legal proposition, such as Wilson & Company, Inc., v. Holmes, 180 Miss. 361, 177 So. 24, 27, wherein we said: "Appellant was only required to maintain its floor in a reasonably safe condition and guard against such accidents as a reasonably prudent person, under the circumstances testified to, could have anticipated or foreseen." Also Williams v. Lumpkin, 169 Miss. 146, 152 So. 842. Of course, those cases correctly announce the law, but from our study of all the evidence, of which we have given only a brief and necessarily circumscribed summary, supra, we are convinced they are not obstacles to our sustaining the verdict of the jury on the facts before them and us in the case at bar, the facts there differing materially from these now before us.

██ █ The nearest case in point we have been able to find is that of Finkbine Lumber Company v. Cunningham, 101 Miss. 292, 57 So. 916, 918. There we declared: "It was not only the duty of the appellant to furnish the appellee with a reasonably safe place in which to work when he started at his work, but this was a continuing

duty. The appellee was engaged in the manufacture of staves after the timber had been cut and handed to him. It was no part of his duty to keep the place where he was working in a reasonably safe condition, free from the accumulation of trash; but it was the ever-present duty of the master to see that this was done. Appellee testifies that because the master neglected his duty, and allowed this trash to accumulate there, he was injured while attempting to reach the oil for the purpose of oiling the saws; and if this testimony is true, which the jury have said by their verdict is the fact, there is no question as to the liability of the master.''

In the case at bar, although appellant's plant had been in operation some weeks, appellee had been on this particular job only from one to three days before his injury, according to the differing versions of various witnesses for both parties hereto. According to his testimony, he was not started with a reasonably safe place to work, and appellant continued to neglect to furnish a reasonably safe place to work, approximately resulting in his injured back and physical incapacity. Therefore, it seems to us that the Finkbine case, supra, is very much in point here.

But, appellant complains of certain hearsay testimony, which went to the quantum of the damages, in addition to the nature of the injury. It will be here remembered that appellant's agent, who discharged appellee, admitted it was because of his back injury, on the slat machine. Therefore, any prejudice to appellant in the admission of the hearsay testimony was on the amount of the damages. Appellant's position is well supported by such cases as Long v. Griffith, 113 Miss. 659, 74 So. 613; Citizens Bank of Coldwater v. Callicott et al., 178 Miss. 747, 174 So. 78, and others. Appellee's only answer is that a doctor of medicine or surgery is an expert, and that he was too poor to defray the expense of expert testimony, and that appellee also had used hearsay testimony in its behalf.

Of course, it must be conceded that this is no answer at all.

The objectionable testimony is revealed in part by the following questions and answers, wherein appellee related what a Jackson bone specialist told him, in consultation, for prospective treatment:

"Q. What was his fee? A. He said his fee would be $25.00, and I would be in the hospital 15 days and possibly be 6 months before I could go to work.

"Q. What would the operation consist of? A. He said he would have to take a piece of bone out of my leg and graft it in my back, put it on the spine." Objection was duly made, which the trial judge overruled, and thereby, in our opinion, committed reversible error.

Appellee, in an effort to induce appellant to produce the doctor, or to have its company doctor testify, waived his rights under the rule governing privileged communications, which appellant was not required to accept or act upon, and which it did not.

There seems vaguely to be some idea in counsel's mind that doctors are entitled to immunity from performing the duties of witnesses, which we do not think they ordinarily possess. It is said in 70 C.J., Witnesses, Section 16, that: "Notwithstanding his preference to attend to his practice, a physician, attorney, or other professional witness may, like any other person in the discharge of his duty as a good citizen, be compelled by an ordinary subpoena to attend court and testify as to matters within his knowledge, . . . ".

We are not dealing here with the testimony of a doctor as an expert, where, as such expert, it is necessary for him to examine into the case and apply his skill and knowledge to form an opinion, or to make preliminary preparation for the purpose of qualifying himself to give expert testimony, or answer, perhaps, hypothetical questions. That was not the case here, but there was involved merely the conventional relation of physician and patient,

and we do not commit ourselves beyond that relationship. This matter of a physician being ordinarily subject to testify under subpoena as any other witness has heretofore been before this Court.

Section 1747, Code 1892, is brought forward into Section 1699, Code 1942. Both statutes provide for the taking of depositions, under various circumstances, among them being: ''When the person whose testimony is required shall be about to depart from the state, or, by reason of age, sickness, or other cause, shall be unable, or likely to be unable to attend the court.'' In the case of American Express Company v. Bradford, 82 Miss. 130, 33 So. 843, this Court said; ''We think the motion to suppress the deposition of Dr. Harrison should have been sustained, for insufficiency of the affidavit required by Code 1892, Section 1747. That one is a physician in large practice, 'and that it is likely that the said witness will be unable to attend trial,' etc., does not, in our opinion, bring the instance within the category meant by the words 'or other causes', in clause 1 of that statute.'' We, of course, are not in a position on the record before us to decide whether appellee can require the deposition of his doctor under another provision of the statute. At any rate, his excuse for offering the hearsay testimony, instead of having process to procure the doctor's presence, is not tenable. The judgment of the trial court must be reversed for this error.

Therefore, the judgment of the trial court is affirmed on the merits as to liability, but reversed as to the amount of damages, and remanded for a new trial as to that feature of the case.

Affirmed in part, reversed in part, and remanded.