WALKER *v.* POLLES, et al.

No. 42988 April 6, 1964 162 So. 2d 631

*Semmes Luckett, Brewer, Brewer & Luckett,* Clarksdale, for appellant.

*Elzy J. Smith, Jr.,* Clarksdale, for appellee.

LEE, C. J.

Two suits, styled Linda G. Polles, a Minor, etc. v. Mrs. A. B. Walker, and George S. Polles v. Mrs. A. B. Walker, were filed in the circuit court. The first sought a judgment for personal injuries, alleged to have been sustained by the plaintiff on or about October 19, 1961, because of the negligence of the defendant in colliding her car with the one to her rear, being driven by the plaintiff. The second suit was by the father of the plaintiff in the first suit for loss of services and medical expense, accrued and to accrue, during the minority of his fifteen year old daughter. Issues were joined by the defendant, and, on her motion the causes were consolidated for trial. The jury returned a verdict for the plaintiff in the first case in the sum of $17,000, and for the plaintiff in the second suit for the sum of $1500. From the judgments entered the defendant appealed.

There was no substantial dispute between the versions of the two drivers. Miss Polles stated that the Walker car, driving westerly along Third Street in the City of Clarksdale, stopped at an intersection because the stoplight was on red. She, driving in the same direction, stopped behind the parked car. When the light turned green, Mrs. Walker, instead of going forward, suddenly backed her car and collided with the Polles car. She also said that she was shaken up at the time, but did not feel particularly bad. On cross examination, she said that the bumper on her car appeared to have been knocked down. She felt "shook-up". She was hurt in "my back, and part of my back". Later she found out that the injury was to "my spine". When

the cross-examiner requested her to point out the place, she said "the muscles were torn in my neck here, and the nerve was pinched, and the bow in my neck was straightened out".

Mrs. Walker, called as an adverse witness, testified that she was driving a Dodge car with pushbutton steering. She first backed out of the pedestrian lane and applied the brakes to stop, leaving the car in reverse gear. When the light turned green, she took her foot off the brakes. The car went backward, not fast, for about three feet, and collided with the Polles car. She did not have her foot on the accelerator at the time. She did not notice any jar, and there was no damage to her car. She did not know that she had caused any damage to the car that she struck.

The plaintiff, prior to this occurrence, had been in excellent physical condition, never having suffered any serious injuries. The next morning she was sore. Later her neck got stiff and she could hardly turn her head or move it. The following day, the family physician, after an examination, had her admitted to the hospital and placed in traction. She was also given sedatives for pain. Finally on October 27, 1961, she was placed under the care of Dr. C. L. Manning, Jr., whose speciality was orthopedics. She has been under this doctor's treatment ever since.

Dr. Manning made extensive examinations and found that she had a restriction or limitation of motion in her neck, particularly in bending her head from side to side. These motions elicited pain which is not expected in a person of her age and build. There was some spasm in the upper borders of the trapezius muscles on both sides and he found evidence of ligamentous damage upon X-ray examination of the neck. He made a demonstration to the jury with the X-ray pictures and pointed out damage to certain ligaments of the spine which tie one bone to another. He also showed that there had been a

straightening of the neck as the result of the muscle spasms pulling the bones into abnormal positions. But there were no fractures or breaks. A trauma, resulting from a sudden constructure of muscles after they have been overstretched, normally causes ligamentous and muscle damage. It is called a traumatic application of forces when "the head moved in the direction the force is applied until the muscles begin to be overstretched, and then the muscles contract suddenly and snap the head back in the opposite direction". Normally this causes ligamentous and muscle damage. The general treatment was supported with the use of a collar to support the head and medicines to relieve pain. His patient had very slow, but progressive improvement. The neck, insofar as its normal position is concerned, is about one-third of normal. In the doctor's opinion, the young lady will have intermittent attacks of pain and discomfort in her neck over a period of ten to fifteen years, and an arthritic condition, as a result, is reasonably anticipated. His estimate of the cost of future medical expenses, arising out of this injury, was $75 to $100 a year.

Pursuant to a motion by the defendant that the court appoint a doctor to examine the plaintiff, the court appointed Dr. W. N. Crowson. He got a history of the injury, following the automobile accident in question, had X-ray pictures made, and otherwise examined the plaintiff during the course of the trial. He found that the past treatment had been thorough and conformed to the usual methods in such cases. He said that his findings were significant in relation to the posterior group of neck muscles and that they were weaker than would be expected in a girl of that age. There was soreness in the muscles which extend down the back to involve the trapezius muscles of the upper back. This resulted in the limitation of movement in all directions. Motion of the last ten or fifteen degrees was painful.

However, he said that this trouble had not disturbed the strength or use of the arms and lower extremities. There was no damage to the bones or to the discs in the little space between them. He displayed and explained to the jury the X-ray pictures, taken that day. As a result of his examination, he concluded that the plaintiff had sustained a sprain of the ligaments and muscles of the neck. This caused the limitation of motion. But, since she was young, it was his opinion that she had a better chance to recover than an older person, and said that these sprains and body strains will heal and get well. He did not see arthritis as a probability.

The plaintiff, in her oral testimony, described the pain, suffering and discomfort which she had undergone since this injury. She told about how unpleasant it was to wear the supportive collar for eight hours a day. She had to miss some school work and dancing lessons. It was shown that she began to take dancing lessons when she was four years of age and had become an excellent dancer. Her ambition was to become proficient and make this work her career. The evidence showed that, in order to be successful, the teacher should be able to demonstrate the various dance steps; and that the limitation in the motion of her neck will hinder her ability to demonstrate the various steps. Her parents gave corroboration in respect to her injuries and her dancing teacher with regard to her dancing proficiency prior to the injury. She had not been able to help her father in the cafe as she had previously done.

Medical expenses had aggregated $425.00, and the repair of the automobile $149.59.

The appellant has assigned, as errors, the granting of two instructions for the appellee because (1) they amounted to a peremptory instruction that causal connection was shown between the appellant's negligence and appellee's injury; (2) the jury was permitted to award damages without requiring that they be proved

by a preponderance of the evidence; and (3) in denying the motion to set aside the verdicts because of their excessiveness, and against the weight of the evidence.

 █ The act of Mrs. Walker in going backward instead of forward was negligence on her part, and was manifestly the cause of the collision. The first sentence in Instruction No. 1 for the plaintiff so told the jury in the words, as used, to-wit: "The Court instructs the Jury for the Plaintiffs, Linda G. Polles and George S. Polles, that the defendant, Mrs. A. B. Walker, was negligent as a matter of law under the admitted circumstances of this case." But, by the second sentence, it went further and said: "The Court further instructs you that if you believe this negligence of the defendant was the proximate cause of injury or damage to plaintiffs, you should return a verdict herein for the plaintiffs, individually, in amounts which will finally and reasonably compensate them for such damage in accordance with the other instructions of this Court."

 █ The qualification, namely, "from the preponderance of the evidence" was omitted. This was error. But six instructions were given for the defendant. One was as to the form of verdict; another on the question of insurance; and the other four placed the burden on the plaintiffs as to negligence and the extent of damages. The defendant's first instruction on the merits required "that the plaintiff must prove that Linda Polles was injured by a preponderance of the evidence and that Mrs. Walker was guilty of negligence proximately causing or contributing to said injuries"; the defendant's next instruction on this point required that: "unless the plaintiff has proved by a preponderance of the evidence that the defendant was guilty of some negligence proximately causing or contributing to the injuries of the plaintiff, then it is your sworn duty to return a verdict for the defendant"; the defendant's third instruction on the merits told the jury that "no damages

are allowable unless proved by a preponderance of the evidence of the plaintiff, on whom the burden of proof rests in this case''; and the defendant's fourth instruction told the jury ''that the burden is on the plaintiff to prove by a preponderance of the evidence and with reasonable certainty that the plaintiff has suffered damages in this case; and such damages, if any, cannot be established by mere surmise, conjecture or speculation, but must be reasonably certain.''

The instructions for the plaintiffs and the defendant add to and are complementary of each other. If they do this and thereby fairly announce the law, the requisite of a fair trial under the law is met. See Alexander's Mississippi Jury Instructions, Sec. 224, pp. 90-1; City of Meridian v. King, 194 Miss. 162, 11 So. 2d 205; Johns-Mansville Products Corp. v. Cather, 208 Miss. 268, 44 So. 2d 405. Obviously the burden of proving causal connection and the fact of damage, as well as its extent, was placed on the plaintiffs, and those elements had to be proven by a preponderance of the evidence. The jury were well warranted in finding that Miss Polles sustained an injury on that occasion by reason of the negligence of Mrs. Walker. Consequently the appellant's argument under propositions (1) and (2) must fail as no harmful or prejudicial error has been shown.

Under the evidence, the jury was warranted in finding that the plaintiff sustained a substantial injury and undergoes considerable pain. The condition arises out of the strain or sprain of muscles in the neck. But neither bones nor discs were broken. The attention of the Court has not been called to any case in this jurisdiction which has upheld a verdict in such a large amount for an injury such as appears in the present record. It is true that the young lady says that it was her purpose to become a dance teacher and that this injury will hinder her in carrying out the work which she

has selected for her career. But it must be remembered that she was only fifteen years of age at the time. The award of damages for the residual of such an injury to a fifteen year old girl in that specific line of employment becomes, under the evidence in this case, highly speculative indeed. Cf. McAlister v. Carl, 197 A. 2d 140, a Maryland case, where the appellant claimed an impairment of her ability as a physical education instructor, and the cases there reviewed.

 This is an unusually large verdict on the record as made. This Court in Chapman v. Powers, 150 Miss. 687, 116 So. 609, recognized the duty of this Court to control the verdicts of juries both as to excessiveness and inadequacy. Likewise in Gulf, M. & N. R. R. Co. v. Jones, 155 Miss. 689, 125 So. 114, recognizing the former holdings of the Court that it was obligated to award relief from excessive verdicts, did so. These rules have been followed since that time in cases too numerous to mention.

 The court must give great regard to the solemn verdict of a jury. But, at the same time, it is not sacred or inviolable. Perfection on earth has never yet been attained. Jurors, like all others, sometimes make mistakes. Taking into consideration all of the evidence in this case and the reasonable inferences therefrom, the Court is of the opinion that the verdict for the plaintiff, Miss Linda Polles, is grossly excessive by the sum of at least $4,000; but if the appellee will, within fifteen days from the date of this decision, enter a remittitur in the sum of $4,000, a judgment for $13,000 will be affirmed; otherwise, it will be reversed and remanded for a new trial on the question of damages only.

The verdict for George S. Polles is not deemed excessive and is affirmed.

Affirmed with remittitur as to appellee Linda Polles, conditionally; and affirmed as to George S. Polles.

*Ethridge, Rodgers, Brady and Patterson, JJ.,* concur.