ROBERTSON, Justice, for the Court:
Daniel Naylor brought suit against Jack D. Rocko and Temple Construction Company in the Circuit Court of Jackson County, for the recovery of damages resulting from an automobile collision.
Before the case was submitted to the jury, the plaintiff nonsuited as to Rocko, leaving Temple Construction Co., his employer, as the only defendant. The jury returned a verdict of $100,000, and judgment was entered for that amount. Temple Construction Company appeals.
Liability was admitted, so the only issue before the trial court and jury was the amount of damages, and the only issue before this Court is the amount of damages.
Plaintiff testified that he stopped because of the traffic on U.S. 90 east of Pascagoula about 5:00 p. m., July 31, 1974. Plaintiff’s 1973 Dodge panel truck was rear-ended by a pickup truck driven by Rocko, and owned by Temple Construction Co. Plaintiff’s truck was repaired at a cost of approximately $1300.
The force of the impact broke the back of the truck seat, according to the plaintiff, and later on “my shoulders started to tighten up around my neck.” Naylor saw Dr. Enger on Sunday following the collision on Wednesday. Dr. Enger prescribed medication and a neck collar. Plaintiff returned to work at Ingalls on Monday. His was a desk job and his salary was $12,800 a year.
On September 11, 1974, in order to be near his parents, he moved with his wife and two children to New Jersey, and went to work for Boeing-Vertol at a starting salary of $15,200. Six weeks later his salary was raised to $16,200. At Boeing he was employed as a master production scheduler, but when business slowed in November of 1974, he was put to work on helicopters. He worked at this until February, 1975.
Naylor testified that he had to lie on his back and pull electrical cables, that he could not handle this work, and asked for a transfer back to his original desk job. The next day he was laid off.
After several weeks, the only job he was able to get in the New Jersey area was a job with J. J. Henry, at a salary of $10,000 a year. He also got an extra job sweeping floors at $2.50 an hour.
*1351 In October, 1974, Naylor began to go to Dr. Burton Pearl, an orthopedic surgeon in New Jersey. Dr. Pearl, by deposition, testified that plaintiff complained of neck pain and pain radiating into both shoulders with limitation of motion of the neck. Dr. Pearl stated that the limitation of motion waxes and wanes, with motion being good at times and then at other times being limited up to 50%.
Dr. Pearl further stated that Naylor’s situation is unpredictable as to future problems because the body tends to get rid of pain but that he will probably have some limitation of motion in his neck.
Dr. Pearl recommended physical therapy at least once a week, but Naylor could not afford the cost of $15 a treatment. He also recommended a cervical myelogram which Naylor did not take. Dr. Pearl performed an electro-myelogram in October, 1975, which was negative. Naylor informed Dr. Pearl that x-rays made in Pascagoula were normal, so Pearl thought additional x-rays unnecessary. He prescribed muscle relaxants. Dr. Pearl was asked the question:
“When you last saw the man, was he still employed?”
He answered:
“Boeing-Vertol had a big layoff, and he was unemployed for about a week or two weeks, and I think he switched over to another company.”
Dr. Pearl saw Naylor about 18 times, stretching from October 15, 1974, to November 18, 1975.
In its first assignment of error, Temple contends:
The trial court erred in permitting, over objection, testimony by the appellee that he was told by someone at Boeing-Vertol that he had been laid off from his job there because of the injury growing out of the accident with the Appellant.
This is the objectionable testimony, according to the appellant:
“Q Mr. Naylor, is it your opinion that you lost the Boeing job because of this injury?
“A Yes, sir. Absolutely. I was told by my supervisor—
BY MR. BROWN: — May it please the Court, I object to what someone else may have told him.
BY THE COURT: Sustained.
BY MR. NELSON:
“Q All right, you can’t answer that. Were you advised, whether it was true or not, that that was the reason you were laid off? Were you advised by someone at Boeing that that was the reason?
BY MR. BROWN: We object again. BY MR. NELSON: That’s an exception to the hearsay rule, Your Honor. I’m not saying that it was true; I’m just saying was he advised—
BY MR. BROWN: — May it please the Court, that doesn’t wash. If someone else told him, that is hearsay, and not admissible.
BY THE COURT: No, I disagree with that.
BY MR. BROWN: Not a defendant.
BY MR. NELSON: Well—
BY THE COURT: — Overruled. Go ahead.
BY MR. NELSON: That’s an—
BY THE COURT: — I’m going to let him.
BY MR. NELSON: Were you advised or told by someone at Boeing that that was the reason you were laid off? BY THE WITNESS: Yes, sir.
BY MR. NELSON: That’s all.”
In 29 Am.Jur.2d, Evidence, sec. 493, pp. 551-52, (1967), hearsay is defined as:
“[Ejvidence which derives its value, not solely from the credit to be given to the witness upon the stand, but in part from the veracity and competency of some other person. .
“The basis for the exclusion of hearsay testimony appears to lie in the fact that hearsay testimony is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. The declarant is not present and available for cross-examination, and both the court and the jury are without opportunity to test the credibility of hearsay *1352 statements by observing the demeanor of the person who made them.”
Again in 29 Am.Jur.2d, Evidence, sec. 497, at page 555, it is said:
“The clearest case of hearsay is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant.”
And, on page 556, we find this language:
“The testimony of a witness as to his knowledge of a fact which is based upon what others have said is inadmissible hearsay, . . . .”
Whether Naylor lost his job because of his injury or because of economic conditions causing a layoff at Boeing-Vertol becomes very important to the jury in fulfilling its sole duty of determining the amount of damages to be awarded to Naylor to compensate him for his injuries wrongfully caused by the defendant. Of necessity, an accurate and truthful answer to that question is required and yet the person who advised Naylor that he was laid off because of his physical condition was not present and available for cross-examination to test the basis and accuracy of his knowledge of why Naylor was laid off. The court and jury were not afforded the opportunity of testing the credibility of the person so advising Naylor.
Naylor asked for and was granted three jury instructions. Instruction No. 1 simply instructed the jury to find for the plaintiff.
Instruction No. 2 listed all the elements of damages which the jury was instructed to consider in arriving at the amount of its verdict. It contained this language:
“[I]n calculating the amount of the verdict you may take into consideration . all of the evidence, if any, of any impairment of the plaintiff’s earning capacity; ... as all such items are proper for the consideration of the jury in determining the damages suffered by the plaintiff, and in fixing the amount of the verdict.”
Plaintiff’s Instruction No. 3 used this language:
“[A]ny loss of time or loss of earning capacity, both temporary and permanent, suffered by him, if any; . . . ”
It is quite apparent from these two instructions that the plaintiff laid great stress on, and wanted the jury to gravely consider, his loss of earning capacity caused by his injury. If he did lose his job at Boeing-Vertol because of his injuries, then he suffered an annual loss of $6,200 because his salary at Boeing-Vertol was $16,200 a year and after he was laid off there the very best he could do was $10,000 a year at J. J. Henry.
Naylor himself bolstered and buttressed his opinion, that he was laid off because of his disabilities, by referring to his supervisor or some other employee at Boeing as having told him just that. This testimony bears repeating:
“Q Mr. Naylor, is it your opinion that you lost the Boeing job because of this injury?
“A Yes, sir. Absolutely. I was told by my supervisor—
BY MR. NELSON: Were you advised or told by someone at Boeing that that was the reason you were laid off?
BY THE WITNESS: Yes, sir.”
Where a fact in issue has been proved by hearsay evidence, this Court has consistently held that the admission of such hearsay evidence constituted reversible error. See State Farm Mutual Automobile Insurance Co. v. Stewart, 288 So.2d 723 (Miss.1974); Pevey v. Alexander Pool Co., Inc., 244 Miss. 25, 139 So.2d 847 (1962); Johns-Mansville Products Corp. v. Cather, 208 Miss. 268, 44 So.2d 405 (1950).
It is impossible for this Court to determine what influence this improperly admitted hearsay testimony had on the jury. The jury did bring in a very large verdict.
The judgment of the lower court must be, and is, reversed and this cause remanded for a new trial on the issue of damages only.
REVERSED AND REMANDED.
*1353 PATTERSON, C. J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.